**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MARK J. GERRY, INC., d/b/a Dove Manufacturing Company, Respondent.**

**No. 19561.**

United States Court of Appeals
Ninth Circuit.

Jan. 5, 1966.

Rehearings Denied March 14, 1966.

---

728

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Marcel Mallet-Prevost, Asst. Gen. Counsel, Soloman I. Hirsh, Marion Griffin, Attorneys, N.L.R.B., Washington, D. C., for petitioner.

Bernard B. Laven, Los Angeles, Cal., for respondent.

Before BARNES and KOELSCH, Circuit Judges, and POWELL, District Judge.

KOELSCH, Circuit Judge.

This is a petition by the National Labor Relations Board for an order of this court enforcing an order of the Board issued against Mark J. Gerry, Inc. on January 30, 1964.

In mid-September, 1960, upon winning an election, the Employees' Group Union was duly certified by the Board as exclusive bargaining representative of respondent's production and maintenance employees. Under date of September 30, it entered into a collective bargaining agreement with respondent. The agreement was for two years, with a provision for automatic annual renewals unless terminated by a sixty day notice prior to the expiration of the current term.

The Los Angeles Dress and Sportswear Joint Board, a subsidiary of the Inter-

national Ladies' Garment Workers' Union, which had been defeated at the election in 1960, renewed its organizing efforts in 1962 and on July 19 of that year filed with the N.L.R.B. a petition for the determination and certification of bargaining representative pursuant to Section 9 of the Act. (29 U.S.C.A. § 159). The Board, concluding that a question of representation had arisen and that the contract was not a bar [In re Mill B, Inc., 40 N.L.R.B. 346 (1942)], caused an election to be held on October 2, 1962. Neither labor organization received a majority of the valid votes and the Board directed a run-off. However, the Dress Union filed objections to the conduct of the election and later several unfair labor practice charges upon which complaints were issued.

The Board consolidated for hearing the unfair labor cases with the representation case (objection to election) and on January 30, 1964 issued the order which it now petitions this court to enforce. The Board (by its adoption of the Trial Examiner's intermediate report) found in substance that during the two week period preceding the election the employer had committed certain unfair labor practices in affording the use of its facilities to the Employers' Group, in making statements both written and oral to its employees that were calculated to influence them to vote for the Employers' Group as their representative, and in actively obstructing the Dress Union in campaigning. The Board also found that afterwards, while the matter of representation remained subject to the run-off election, the employer engaged in similar conduct and, in addition, discharged Ozie Perkins, one of its production employees, because of her activities on behalf of the Dress Union. Accordingly, the Board directed a new election and ordered the respondent to discontinue such practices and not recognize the Employers' Group or give effect to

the existing contract "unless and until said organization shall have demonstrated its exclusive majority representative status pursuant to a Board-conducted election among the Respondent's employees at its Los Angeles, California, plant." Further, the Board ordered respondent to offer the discharged employee reinstatement, to compensate her for any loss of pay and to post appropriate notices.

■ Initially respondent urges that the Board should not have consolidated the cases but should have heard them separately. The unfair labor practice charges bore a fair relationship to each other and to the matter at issue in the representation case. The question of whether respondent's actions were calculated to influence the employees' selection of a bargaining representative was common to all of them. "[T]here is no intrinsic evil in such a consolidated hearing * * *" [N. L. R. B. v. LaSalle Steel Co., 178 F.2d 829, 832 (7th Cir. 1949)] and no prejudice to the respondent resulting therefrom is apparent to us.

■ The respondent's main contention is that the findings of fact are not supported by substantial evidence. Upon a thorough consideration of the entire record, we are persuaded otherwise. The evidence, viewed in a light most favorable to the prevailing party, clearly shows the employer actively supported one of two rival organizations that were vieing for certification as the employees' bargaining representative. Its acts, whether well intentioned or otherwise, abridged rights guaranteed respondents' employees under the Act and constituted unfair labor practices.

■■ The next question concerns the validity of the Board's order so far as it purports to suspend the operation of the existing bargaining agreement until and unless the Employees' Group wins the representation election.[1]

---

1. We disagree with counsel that the matter may not now be considered because respondent failed to object when the case was still before the Board. The question

is one of whether the Board acted in excess of its jurisdiction and hence can be asserted initially in an enforcement proceeding for, as the Supreme Court said,

The Board calls attention to the following cases in which orders containing the same or similar provisions were approved and enforced:

International Ladies Garment Workers' Union v. N. L. R. B., 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961);

L. Ronney & Sons Furniture Mfg. Co., 93 N.L.R.B. 1049, enforced 206 F.2d 730 (9th Cir. 1953);

Signal Oil & Gas Co., 131 N.L.R.B. 1427, enforced 303 F.2d 785 (5th Cir. 1962);

Summers Fertilizer Co., 117 N.L.R.B. 245, enforced 251 F.2d 514 (1st Cir. 1958), and

St. Louis Independent Packing Co., 129 N.L.R.B. 622, enforced 291 F.2d 700 (7th Cir. 1961).

In each of them the contract or the dealings between employer and union against which the order was directed constituted an unfair labor practice. For example, in *Garment Workers'* the order suspended an agreement entered into at a time when the union did not represent a majority of the employees in the unit. The Court declared that the agreement reflected violations of the employees' rights, guaranteed by Section 7 of the Act, "to bargain collectively through representatives of their own choosing" or "to refrain from" such bargaining. It pointed out that by so recognizing the union, the employer interfered with the employees' Section 7 rights and gave support to a labor organization in violation of Section 8(a) (1) and 8(a) (2) of the Act; and that the union, by mistakenly assuming to represent the bargaining unit, was guilty of restraining and coercing the employees in the free exercise of those rights. [Sec. 8(b) (1)

(A)]. For these reasons, said the Court, the "unlawful genesis of this agreement precludes its partial validity."

■ In *L. Ronney & Sons,* supra, 93 N.L.R.B. 1049, the employer's illegal assistance to the prevailing union immediately before the representation election cast serious doubt upon the status of that union as bargaining representative, and upon the validity of the ensuing collective bargaining agreement. This was also true in *Signal Oil & Gas Co.,* supra, 131 N.L.R.B. 1427. The Fifth Circuit observed, in granting enforcement of the order [303 F.2d 785, 787]:

"Execution of a contract with a union does constitute support of it, since 'once an employer has conferred recognition on a particular organization it has a marked advantage over any other in securing the adherence of employees, and hence in preventing the recognition of any other.' N. L. R. B. v. Pennsylvania Greyhound Lines, 1938, 303 U.S. 261, 268, 58 S.Ct. 571, 82 L.Ed. 831. Employers who have entered a collective bargaining agreement with a union when a real question as to representation existed have been held responsible for committing an unfair labor practice. (Citations omitted)."

However, in this case, unlike those relied upon by the Board, the validity of the collective bargaining agreement was not in issue and there was no basis in the evidence for a finding of its invalidity. On the contrary, it appeared that the agreement was consummated nearly two years before the inception of any unfair labor practices, and at a time when the Employers' Group was manifestly the duly authorized and designated representative of the employee bargaining unit.[2] This distinction is critical. In

"Since the court is ordering entry of a decree, it need not render such a decree if the Board has patently traveled outside the orbit of its authority so that there is legally speaking no order to enforce." N. L. R. B. v. Cheney California Lumber Co., 327 U.S. 385, 388, 66 S.Ct. 553, 554, 90 L.Ed. 739 (1946).

Moreover, the matter was called to the Board's attention. The record reveals that respondent duly excepted to the order on the ground that "the Labor Board does not have jurisdiction to cancel or modify vested rights of a binding valid contract of the employees."

2. During the hearing, the Trial Examiner, in reply to an inquiry, declared "I am

Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938), the Court explained the source, nature and limits of the Board's corrective powers. It declared that:

"* * * the Act gives no express authority to the Board to invalidate contracts with independent labor organizations. That authority, if it exists, must rest upon the provisions of Section 10(c). That section authorizes the Board, when it has found the employer guilty of unfair labor practices, to require him to desist from such practices 'and to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this Act'." [3]

But, continued the Court,

"[t]he power to command affirmative action is remedial, not punitive, and is to be exercised in aid of the Board's authority to restrain violations and as a means of removing or avoiding the consequences of violation where those consequences are of a kind to thwart the purposes of the Act."

The Court concluded that the Board had exceeded its jurisdiction, because there was "no basis for a finding that the contracts with the Brotherhood and its locals were a consequence of the unfair labor practices found by the Board or that these contracts in themselves thwart any policy of the Act or that their cancellation would in any way make the order to cease the specified practices any more effective." These principles, applicable to this case, dictate a like conclusion.

 Lastly, respondent urges that the Trial Examiner denied it a fair hearing and, in particular, that he was biased and unduly limited respondent's cross-examination of several witnesses.

The charge of bias was predicated upon statements made by the Examiner during the course of the hearing. However, the most that appears is that, on several occasions following an objection, he engaged in a colloquy with counsel concerning the ruling. None of the statements nor anything about them suggests he entertained a feeling of hostility or ill will toward respondent. It is true that, on several instances, the Trial Examiner too narrowly circumscribed respondent's cross-examination of a witness. But although error, the rulings could not be deemed so prejudicial as to constitute a denial of procedural due process, for they simply prevented inquiries into matters that were collateral to the main issue.

The order of the Board is modified so as to eliminate the directions as they appear therein which require respondent not to give effect to the agreement with the Employers' Group and to post notices containing such a recital. As modified, the order will be enforced.

---

not too concerned about contracts or the right of contract and so forth, but there is no allegation in the complaint that this contract in any way was not the product of a free union or free employer."

3. By subsequent amendment to the decision in Consolidated Edison, the word "subchapter" was substituted for "Act." However, this did not change the import of the sentence.