**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CHELSEA CLOCK COMPANY, Respondent.**

No. 7237.

United States Court of Appeals
First Circuit.

May 16, 1969.

Warren M. Davison, Washington, D. C., Atty., with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Harold B. Shore, Washington, D. C., Atty., were on brief, for petitioner.

Duane R. Batista, Boston, Mass., with whom Murray S. Freeman, John J. Delaney, Jr., and Nutter, McClennen & Fish, Boston, Mass., were on brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

In opposing the petition for enforcement of an order of the National Labor Relations Board, the respondent company raises important questions concerning the propriety of the Regional Director's conducting of a consent election.

The facts are relatively undisputed and easily stated. On August 4, 1966, the company and the union, District No. 38, International Association of Machinists and Aerospace Workers, AFL–CIO, entered into a consent election agreement. As is frequently the case, the agreement

provided that the Regional Director's determination of challenges and objections would be final and binding. An election was held on August 31, 1966, and of a total of 38 valid ballots, 21 were cast for the union and 17 against. The company requested that the election be set aside due to the prejudicial effect of the pro-union conduct of one of its supervisors, Kenneth Ultsch.

Ultsch was discharged by the company and shortly thereafter filed an unfair labor practice charge with the Board. The Regional Director concluded that there was a substantial question as to whether Ultsch was in fact a supervisor. Since the resolution of this issue was relevant to both the unfair labor practice and the representation cases, the Regional Director ordered that both cases be consolidated for hearing before a trial examiner.[1]

On May 24, 1967, the trial examiner issued his decision in the consolidated case. He found that Ultsch was a supervisor but that his conduct did not justify setting aside the election. On September 28, 1967, the Board affirmed the finding of the trial examiner as to Ultsch's status, and on October 3, 1967, the Regional Director confirmed the election and certified the union.

On October 6, 1967, the union requested that the company bargain with it as bargaining representative. The company refused on the ground that the election was invalid and that the Regional Director's certification of the union was arbitrary and capricious. On October 31, 1967, unfair labor practice proceedings were initiated. The Board invoked its summary judgment procedure and on March 5, 1968, it found that the company had violated §§ 8(a) (5) and (1) of the Act.

■■ We consider first the company's challenge to the Board's summary judgment procedure. To the extent that the challenge rests on an alleged abuse of the Board's rule-making power, it is misplaced. NLRB v. Wyman-Gordon Co., 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969). To the extent that the company relies on the Board's failure to publish the summary judgment regulations in the Federal Register, we adhere to our view that rules properly arrived at are valid as against one with actual notice of them. Wyman-Gordon v. NLRB, 397 F.2d 394, at 396 n. 1 (1st Cir. 1968); United States v. Aarons, 310 F.2d 341, 347–348 (2d Cir. 1962).

Although we do not find the Board's summary judgment procedure to be inherently defective, we do find that its decision was erroneous. We so hold because, in our view, this case reveals a serious departure from the proper conducting of a consent election. It is to that subject that we now turn.

■ Expedited elections are expressly authorized by § 9(c) (4) of the National Labor Relations Act, 29 U.S.C. § 159(c) (4) (1964).[2] They are of two types: the stipulation election and the orthodox consent election which was involved in this case. In both types of elections the company and the union agree as to the appropriate unit, the composition of the ballot, the payroll period of eligibility, and the date and place of the election. The major difference between the two types of elections is that in the stipulation election disputes are resolved by the Board, whereas in the consent election disputes are determined by the Regional Director.

Obviously, both types of elections—and particularly the consent election—afford considerable savings of time and expense.

---

1. The Regional Director also ordered that upon issuance of the trial examiner's decision, the representation case would be severed from the unfair labor practice case for final determination by the Regional Director in accordance with the consent election agreement. This did not in fact occur. It was not until 4 months after the trial examiner's decision—specifically, not until after the Board's affirmance of the trial examiner—that the Regional Director issued his report.

2. Board Regulations covering election procedures are found at 29 C.F.R. § 102.69–70. In addition, a discussion of election procedures appears in the Board's Statement of Procedure, 29 C.F.R. § 101.17–21.

We take notice of the fact that the consent election is a valuable, and indeed necessary, device for the promotion of the purposes of the National Labor Relations Act. In light of the policy of the Act to prevent labor unrest by facilitating the expression of employee choice with respect to a bargaining representative, a procedure which fairly expedites that process is to be encouraged. The procedure followed in this case, however, insured the opposite result.

The advantages of the consent election have their price. The parties agree to forego resort to the Board for resolution of disputes and in so doing they leave the determination of their fate to the Regional Director. It is the contention of the company in this case that because of the consolidation of the unfair labor practice and representation case, the parties obtained neither a time saving nor a decision by the Regional Director.

The Board's response is simply that the consent election agreement vested virtually absolute discretion as to the method of investigation and decision in the Regional Director, and that therefore, the Regional Director was clearly authorized in consolidating the unfair labor practice and representation cases.

■ It is true, of course, that a Regional Director may delegate the task of investigation, Western Wear of California, Inc., 87 N.L.R.B. 1363 (1949); International Shoe Co., 87 N.L.R.B. 479 (1949).

■■ At oral argument counsel for the Board suggested that the Regional Director's role in consent elections is not unlike the Board's role in Board-conducted elections. There is, of course, a degree of similarity. Just as in a consent election, the Regional Director must decide disputes and cannot delegate the task to the Board, Chardon Telephone Co., 139 N.L.R.B. 529 (1962), so in a Board-conducted election, the Board must decide and cannot delegate the ultimate decision to the Regional Director. Pepsi-Cola Buffalo Bottling Co. v. NLRB, 409 F.2d 676 (2d Cir. March 25, 1969). Despite

this common obligation, there are significant differences between the Regional Director and the Board as to the means available for discharging their respective responsibilities. For while the Regional Director may hold a hearing on objections to an election, in most cases he need not, and indeed does not. *See, e. g.,* NLRB v. J. W. Rex Co., 243 F.2d 356 (3d Cir. 1957); NLRB v. Summer Sand & Gravel, 293 F.2d 754 (9th Cir. 1961); NLRB v. Standard Transformer Co., 202 F.2d 846 (6th Cir. 1958); NLRB v. Saxe-Glassman Shoe Corp., 201 F.2d 238 (1st Cir. 1953). Moreover, on review his decision is set aside only if "arbitrary or capricious". *See, e. g.,* NLRB v. Jas. H. Matthews & Co., 342 F.2d 129 (3d Cir. 1965), cert. denied, 382 U.S. 832, 86 S.Ct. 74, 15 L.Ed.2d 76; NLRB v. Volney Felt Mills, Inc., 210 F.2d 559 (6th Cir. 1954); Manning, Maxwell and Moore v. NLRB, 324 F.2d 857 (5th Cir. 1963); NLRB v. Saxe-Glassman Shoe Corp., *supra.*

■ Whereas in consent elections the parties stipulate such issues as the proper unit, voter eligibility, etc., in a Board-conducted election the Board is required to hold a hearing on these questions. Section 9(c) (1), National Labor Relations Act, 29 U.S.C. § 159(c) (1). While the Board's determinations will be conclusive unless arbitrary or capricious, its findings must be supported by substantial evidence.

■ Precisely because of the scope given the Regional Director in the manner of arriving at the decision which by consent has been vested in him by the parties, it is vital that he in fact, not merely in form, make that decision and that the procedures adopted by him not be inconsistent with the overriding purpose of securing an expedited decision from the Regional Director himself. This requirement is, we feel, the clear implication of the Board's own action in Chardon Telephone Co., 139 N.L.R.B. 529 (1962) in severing and therefore refusing to decide a consent election representation case which had been consolidated with an unfair labor practice case.

And if the procedures and circumstances leading up to a resolution of a consent election controversy clearly indicate an abandonment of decision making by the Regional Director, we would deem this to be, however well intentioned, just as "arbitrary and capricious" as not holding a hearing in some cases. *See e. g.,* NLRB v. Sidran Sportswear, 181 F.2d 671 (5th Cir. 1950).

In our view the procedures and circumstances of this case amounted to such an abandonment. The trouble began with the delegation of issues to the Trial Examiner. He was asked to do two things: (1) determine Ultsch's supervisory status, and (2) determine if Ultsch was an "agent of the union". The first assignment was clearly relevant to both the unfair labor practice charge and the representation proceeding.[3]

Assuming that the second assignment was intended to direct the Trial Examiner to pursue the inquiry, whether or not, if a supervisor, Ultsch exercised "supervisory coercion" over employees, this was not relevant to the unfair labor practice charge, for Ultsch's discharge was lawful or unlawful depending solely on whether he was found to be a supervisor or not. While the Regional Director's delegation of this issue was not per se improper, doubt on the integrity of his final resolution of the representation issue was created in the initial colloquy in the consolidated proceedings before the Trial Examiner, when the Regional Director's counsel summed up his justification for consolidation in the following words:

> "Of course, the adoption of this method; namely, utilizing the services of the Trial Examiner on consolidated hearings is calculated to avoid a duplicated effort and we know that it does save time and expense. More import-

antly this precludes the enormous possibility of inconsistent conclusions reached by the Trial Examiner in the unfair labor practice case and by the Regional Director in the representation case."

We realize that this statement of counsel at the outset of the proceedings should not be overstressed. But what subsequently occurred points conclusively to the fact that the Regional Director was principally concerned about avoiding inconsistent results in the two cases. The Trial Examiner filed his report on May 29, 1967 and remanded to the Regional Director. The Board affirmed the Trial Examiner as to the unfair labor practice charges on September 28, 1967. The Regional Director, five days later, on October 3, 1967, adopted without discussion the findings and conclusions of the Trial Examiner in the representation case. Thus the consent proceedings reached an end thirteen months after the election.

The length of time involved cannot be justified on the ground that the Regional Director delegated the decision to the Trial Examiner. After the Trial Examiner's decision, the representation case was severed in form but not in fact because no decision was forthcoming until immediately after the Board's decision. In short, we conclude that the Regional Director did precisely what the Board has held he may not do—abdicate his responsibility to the Board. *See* Chardon Telephone Co., *supra.*

The procedure followed by the Regional Director is rendered even less acceptable by the availability of alternatives. He could have reached a decision without consolidation, or if consolidation were deemed desirable, he could have severed the representation case and decided it after the trial examiner deter-

---

3. The second assignment was technically not relevant to any issue, for if Ultsch was found not to be a supervisor, the fact that he—an employee—acted as "agent for the union" would seem to refer only to Section 7 or protected activities and would not point to any improper conduct. If he were found to be a supervisor, this would, strictly speaking, not be addressed to the proper inquiry whether his activities constituted "supervisory coercion" and interference with employee free choice. *See, e. g.,* NLRB v. Lamar Electric Membership Corp., 362 F.2d 505 (5th Cir. 1966).

mined Ultsch's supervisory status.[4] We hold, in accord with the Board's well established rule, that the Regional Director and not the Board must decide disputes in consent elections. We add only that if the attractiveness of consent elections is to be preserved, he must do so in a timely fashion.

In view of our holding above, we need not pass on the company's contention that the consolidation created a conflict of interest for the Regional Director. Nevertheless, we are constrained to comment on this point because again it involves serious implications for the continued vitality of consent elections. The alleged conflict may be more apparent than real. But on the other hand, the Regional Director who was to be the ultimate judge in the representation case was also presiding over the office which prosecuted the unfair labor practice case. While he did not personally try the case, it is not inconceivable that he was consulted on trial strategy. It is not a happy situation and it is less so because it is unnecessary. Someone from another region could have been brought in to prosecute the unfair labor case, or one of the local staff attorneys could have been assigned to another Regional Director, or it could have simply been postponed until after a decision on the representation case. In other areas the Board and the courts have exhibited a salutary concern for propriety in the conducting of consent elections. *See, e. g.,* Delta Drilling Co. v. NLRB, 406 F.2d 109 (5th Cir. 1969); Austill Waxed Paper Co., 169 N.L.R.B. No. 169; Athbro Precision Engineering Corp., 166 N.L.R.B. No. 116. Such concern is equally warranted here.

In conclusion, we hold that the election must be set aside and enforcement of the Board's order must be denied. In so holding we do not say that consolidation may never be employed in a consent election context. We do think, however, that where consent elections are involved, there will be few cases where consolidation will recommend itself. Given the ever-present backlog of proceedings on the Board's docket, it is highly probable that consolidation (even with severance of the representation case after the Trial Examiner's decision) will undermine the expediting policy of consent elections.[5] Moreover, it is consolidation which creates the appearance, if not the fact, of conflict of interest in the Regional Director. Finally, as we have observed, n. 4 *supra,* consolidation is not essential to the prevention of evils flowing from

---

4. To the extent that consolidation was motivated by a desire to prevent inconsistent results in the unfair labor practice and representation cases, we observe that such a goal would have been achieved in this case by severance after the determination of Ultsch's supervisory status.

In other cases the prevention of inconsistent results may be more troublesome. Inconsistent results are not desirable but the possibility is not so critical to the preservation of labor peace that the viability of consent elections is to be destroyed. In our view it is not necessary to throw the baby out with the bath. Moreover, we note that the fear of inconsistent results may be exaggerated. We say this because our analysis reveals that in only a small class of cases will the subsequent decision of the Trial Examiner and the Board affect the determination of the Regional Director. Suppose, for example, that the Regional Director acted on the election without consolidation. If thereafter the Board were to find no unfair labor practice, the Regional Director's opinion would stand, and, even if the Board were to find an unfair labor practice, the Regional Director's decision would still stand unless it was found that the unfair labor practice so infected the election that its results were vitiated. Thus, in this case had the Regional Director set aside the election and the Board subsequently found an unfair labor practice affecting the election, the remedy would have been to certify the union. In short, the delay occasioned by consolidation, and particularly by waiting until the Board has acted before deciding the election challenges, is simply not justified by the goal of preventing inconsistent results.

5. For example, in the present case the election was held on August 31, 1966, but the hearing before the Trial Examiner did not occur until December of 1966 and his decision was not rendered until May 24, 1967.

inconsistent results. To hold otherwise would mean that the advantages of a consent election could never be had where unfair labor practice charges are filed.

A decree will be entered setting aside the Board's order.