**BARRUS CONSTRUCTION COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 72–1544.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1972.

Decided July 18, 1973.

Fred W. Elarbee, Jr., Atlanta, Ga. (David M. Vaughan and Constangy & Prowell, Atlanta, Ga., on brief), for petitioner.

Jonathan G. Axelrod, Atty., N. L. R. B. (Peter G. Nash, Gen. Counsel, Pa-

trick Hardin, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Leonard M. Wagman, Atty., N. L. R. B., on brief), for respondent.

Before WINTER, CRAVEN and WIDENER, Circuit Judges.

CRAVEN, Circuit Judge:

This is a petition by employer Barrus Construction Company challenging the National Labor Relations Board's long established procedure of consolidating for a single hearing objections to a representation election and charges of unfair labor practices. We again approve the consolidation procedure and, on the facts of this case, enforce the order of the Board.

Following a victory by the International Union of Operating Engineers in a representation election conducted at the company's plant in Kinston, North Carolina, the company filed timely objections to the election with the National Labor Relations Board. The union thereafter filed an unfair labor practices charge with the Board, alleging that employee Quinn had been wrongfully discharged by the company in violation of 29 U.S.C. § 158(a)(1) and (3). After a hearing at which the unfair labor practice charge and the objections to the representation election had been consolidated, the Trial Examiner validated the election and found that the company had unlawfully discharged Quinn. Pursuant to a complaint by the Regional Director alleging that the company refused to bargain with the union, the Board affirmed the Trial Examiner's findings, certified the union as the exclusive collective bargaining representative, and ordered the company to bargain with the union.

The company has now petitioned this court, pursuant to 29 U.S.C. § 160, to review and set aside the order of the Board requiring that it bargain collectively with the union as the exclusive representative of the employees in the appropriate unit.[1] The company challenges both the results of the election and the procedural validity of the hearing, contending primarily that its rights were prejudiced by the manner in which the hearing was consolidated and conducted. We affirm the findings of the Board and grant the Board's cross-application for enforcement of its order.

On February 11, 1970, the union filed an election petition seeking to represent all hourly paid production and maintenance employees at the company's asphalt paving facility in Kinston. A stipulation for certification upon consent election was executed by the parties on March 9, 1970, and an election by secret ballot was conducted on April 16, 1970. Of the 400 eligible voters, 396 actually cast ballots, with the union receiving 201 votes.

Almost immediately following the election, the company filed its objections to conduct affecting the outcome of the election. The company alleged (1) that at a meeting of company employees a union official named Snodgrass suggested putting kerosene in the lunch boxes of anti-union employees, (2) that employee Willie Quinn, a union advocate, formed a "violence club" to intimidate non-union employees, (3) that the union paid employees for their support and votes, and (4) that union officials misrepresented certain facts in replying to a company letter to employees.

The Regional Director of Region 11 of the NLRB investigated the company's objections to the election and, in a report dated July 6, 1970, recommended that a hearing be held to resolve conflicting evidence regarding the issues raised by objections 1 and 2. He further recommended that objections 3 and 4 be overruled.

The company filed exceptions to the report, urging that the recommended hearing include evidence regarding not only objections 3 and 4, but also newly discovered evidence of other threats and violence. The Board overruled objection

---

1. The unlawful discharge of employee Quinn was not applied.

4, but ordered the hearing expanded to include "both objection 3 and alleged threats of violence and retaliation."

On May 26, 1970, while the Board was considering the company's objections, the union filed its unfair labor practice charge, alleging that the company had wrongfully discharged employee Willie Quinn because of his support of the union.

The Regional Director then ordered the consolidation of the company's case challenging the election and the union's case challenging the discharge of Quinn "in order to effectuate the purposes of the Act and to avoid unnecessary costs and delay." [2] The company filed a motion to sever the proceedings, pursuant to 29 C.F.R. § 102.33(d) (1972), alleging a conflict' of interest in that the same attorney represented the Board in both cases. The Trial Examiner considered the conflict of interest "unlikely" and denied the motion to sever.

In a decision issued March 30, 1971, after a full hearing, the Trial Examiner found that the company's objections to the election were without merit and that the company had unlawfully discharged Quinn. The company has taken two basic positions on appeal from the Board's affirmance of these findings. It argues that the manner in which the consolidated hearing was conducted denied the company a fair opportunity to present its case, and it asserts that the election did not afford the employees a free and untrammeled choice.

### The Hearing

In challenging the validity of the hearing, the company asserts that it was denied due process when the Trial Examiner (1) denied the motion to sever the consolidated hearing, (2) restricted the scope of the hearing to certain issues, and (3) refused to consider the testimony of a particular witness. We will consider each claim separately.

Initially, we note the standard by which we must assess the company's due process claims. The standard is simply whether there has been a fair hearing. NLRB v. Indiana & Mich. Elect. Co., 318 U.S. 9, 28, 63 S.Ct. 394, 87 L.Ed. 579 (1943).

So long as the objecting party . . . is given the opportunity to be heard, to call and cross-examine those who are the source of Board evidence, and to present pertinent evidence of its own the hearing is fundamentally fair and satisfies the requirements of due process.

NLRB v. Bata Shoe Co., 377 F.2d 821, 826, 827 (4th Cir.), cert. denied, 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967). *Accord*, NLRB v. Poinsett Lumber & Mfg. Co., 221 F.2d 121, 123 (4th Cir. 1955) ("right to produce evidence or conduct cross-examination material to the issue").

The company argues that consolidation · was improper here because a conflict of interest confronted the attorney who simultaneously undertook to represent the Board in the representation case and the General Counsel in the unfair labor practice case. It is claimed that the attorney's role regarding some of the issues relevant to the unfair labor practice case [3] precluded his absolute

---

2. 29 C.F.R. § 102.33 (1972) provides in part:

    (a) Whenever the general counsel deems it necessary in order to effectuate the purposes of the act or to avoid unnecessary costs or delay, he . . . may, at any time after a charge has been filed with a regional director pursuant to § 102.10, order that such charge and any proceeding which may have been initiated with respect thereto:

    . . . .

    (2) Be consolidated with any other proceeding which may have been instituted in the same region . . . .

3. An unfair labor charges hearing is described by the NLRB Statements of Procedure, 29 C.F.R. § 101.10(a) (1972), as follows:

    The Government's case is conducted by an attorney attached to the Board's regional office, who has the responsibility of presenting the evidence in support of the complaint.

neutrality in the representation case.[4] The company asserts that the conflict of interest was particularly acute here because of the close connection of the facts underlying the consolidated cases. For example, the conduct of employee Quinn was at issue in each case. The union and the Board, in the unfair labor practice case, claimed that Quinn was wrongfully discharged because of his pro-union activity. The company, however, asserted that Quinn was discharged for threatening fellow employees, and this activity was one of the company's main objections to the election. In this factual situation, the company suggests that the attorney resisted the introduction of evidence tending to show questionable conduct by Quinn in order to enhance his chances of success in the unfair labor practice charge. This position of supposed advocacy, it is claimed, caused the attorney to breach his duty in the representation case to maintain neutrality as to the merits and to strive for admission of such evidence so as to insure as complete a record as possible.

Consolidation of an unfair labor practice case with a representation case in a single hearing is a Board practice well recognized by the courts. *E. g.*, Bata Shoe, *supra*; NLRB v. Mark J. Gerry, Inc., 355 F.2d 727, 729 (9th Cir.), cert. denied, 385 U.S. 820, 87 S.Ct. 46, 17 L. Ed.2d 58 (1966); NLRB v. Dal-Tex Optical Co., 310 F.2d 58, 61 (5th Cir. 1962). Both long ago and recently we have repeatedly approved this practice, recognizing that it is "a customary and proper procedure that saves time and expense." NLRB v. Dixie Shirt Co., 176 F.2d 969, 970 (4th Cir. 1949).

▮ An alleged conflict of interest said to arise from the dual role played by the Board's attorney in consolidated proceedings may be more apparent than real, NLRB v. Chelsea Clock Co., 411 F. 2d 189, 194 (1st Cir. 1969), and a denial of due process cannot be established by this theoretical conflict, at least where, as here, the company was adequately represented by competent counsel. *See* Lane v. NLRB, 186 F.2d 671, 675 (10th Cir.), cert. denied, 342 U.S. 813, 72 S.Ct. 26, 96 L.Ed. 614 (1951). Due process concerns itself with substance and not with form. NLRB v. Mackay Radio & T. Co., 304 U.S. 333, 351, 58 S.Ct. 904, 82 L.Ed. 1381 (1938). As Judge Widener points out, there were some 59 objections and motions to strike made during the hearing, with the Board's attorney making 34 of them and joining in nine of the Union's 17 objections. We think such participation insufficient to establish such a degree of partisanship that would destroy the fairness of the hearing. The company was given ample opportunity to produce evidence of its own and to cross-examine adverse witnesses. *See Lane, supra.* The company's reliance on *Chelsea Clock, supra,* is misplaced. That court never reached the conflict of interest question. Moreover, the alleged conflict was both factually and theoretically dissimilar from that alleged here. We perceive no prejudice whatsoever to the company by reason of consolidation of the two hearings. ,

The company next claims that it was denied due process when the Trial Examiner limited the hearing to certain issues. In its decision on the company's exceptions to the Regional Director's report recommending a hearing, the Board directed that the Trial Examiner consider objections 1, 2, and 3 raised by the company to the election, as well as "alleged threats of violence and retaliation." The Trial Examiner, however, construed

---

4. The NLRB Field Manual, § 11424.4, states that the Board's counsel in a representation hearing must exercise self-restraint, be impartial, and display the appearance of impartiality. The primary interest of the Board's agents in this type of hearing is "to insure that the record contains as full a statement of the pertinent facts as may be necessary for determination of the case." 29 C.F.R. § 101.20(c) (1972). In so doing, he may attack evidence introduced by either party. NLRB Field Manual, § 11424.4.

the Board's order as limiting the hearing to the specific issues raised by objections 1, 2, and 3.

The company argues that it had evidence of additional threats of violence which it was not allowed to prove because of the Trial Examiner's restrictive view of the hearing. We believe the company was permitted to put into the record all the evidence which it had to support its position. The company stated in its Response to Notice to Show Cause on General Counsel's Motion for Summary Judgment that the "additional evidence" purportedly excluded by the Trial Examiner would have consisted of the testimony of eight workmen. The record contains affidavits setting out the proposed testimony of all eight men; moreover, the record also contains the *full* testimony of two of these men, Gray and Goff. The company has adverted to the examination of these two men as the only two instances where the Trial Examiner applied his disputed ruling concerning the hearing's scope. When the Union's attorney objected to Gray's testimony, the Trial Examiner permitted company counsel to proffer what the witness would have said.[5] When a similar objection was raised as to Goff's testimony, the Trial Examiner again permitted company counsel to continue unhampered his examination of the witness after being assured that the proffered testimony was being adduced in support of a numbered objection. The record was, consequently, full and complete for the Board's examination.

■ The company further maintains that although the additional evidence may have gotten into the record, it was nevertheless denied due process because the Trial Examiner had already indicated that such evidence would not be considered. This argument misperceives the relative positions of the Trial Examiner and the Board as fact-finders. The ultimate trier of fact is the Board and not the Trial Examiner, who, arguably, took a more restrictive view of the scope of the hearing than was justified. In its decision certifying the union, the Board, after noting the company's objection and assuming that the Trial Examiner's view was erroneous, clearly stated that, "We have considered such [disputed] evidence and conclude it warrants no modification of the Trial Examiner's results." We find that there was a sufficient record upon which the Board could have adopted the company's contentions if it had been so persuaded, and that any error concerning the scope of the hearing was nonprejudicial.

■ The final claim relating to the hearing is that the Trial Examiner's refusal to consider the testimony of employee Horace Jones denied the company due process. As we understand the record, the company sought to prove that a union representative named Snodgrass spoke of putting kerosene in employees' food to coerce union membership. The proof as to Snodgrass failed, but there was incidental mention of Dixon, also a union representative. When Dixon denied making any statement in which he referred to kerosene, the company, in the guise of rebuttal to Dixon, sought to shift its line of attack and to prove by Horace Jones's testimony that Dixon made the threat. After hearing the testimony of Jones, the Trial Examiner ordered that it be stricken because it was not true rebuttal and was in violation of the Board's own regulations.[6]

---

5. Actually, the witness was allowed to testify. In a discussion relating to the form the offer of proof should take, the Trial Examiner explained his view relative to the inclusion into the record of disputed evidence:

> Well, there is that choice, but there's no reason why it cannot be done the other way, and at least we will have the testimony on record should the Board

in its review of this case decide that my ruling [concerning the scope of the hearing] was incorrect.

6. The Board's regulations require timely notice of what is proposed to be proved. 29 C.F.R. § 102.69(a) (1972) states that all objections to conduct affecting the results of an election to be filed within five days after the furnishing of the tally

Whether or not the Trial Examiner was correct in excluding the questioned evidence need not be decided, for it is clear that Jones's testimony was included in the record upon which the Board, as ultimate trier of fact, based its decision. As in our discussion of the company's objection to the scope of the hearing, we find the Board was presented with a sufficient record and that the company was given a fair opportunity to present its case.

## The Election

In this appeal the company's substantive challenge to the election is that the employees were not afforded a free and untrammeled choice because rumors of threats and violence created an atmosphere of fear on election day. Specifically, the company emphasizes the activity of employee Russell in circulating rumors concerning the "violence club," whose supposed function was to intimidate non-union employees. Russell, incidentally, is claimed by each side to be a supporter of the other. The overall effect of this activity, it is asserted, was to create a coercive situation in which a free election was impossible.

The Trial Examiner heard testimony from a multitude of witnesses, including Russell, concerning both the violence club rumor and any other rumors or overt acts which might have affected the outcome of the election. He found that the company had not sustained its burden of proof, and he specifically noted that:

> there was no "general atmosphere among voting employees of confusion and fear of reprisal for failing to vote for or support the Union" and nothing to deter such employees from exercising their free choice at the election.[7]

The Board subsequently affirmed the decision of the Trial Examiner and certified the union, holding that the company's "objections to the election held on April 16, 1970, are without merit."

Our review of the election is controlled by a clearly enunciated standard: The Board's findings must be upheld if supported by substantial evidence viewing the record as a whole. Universal Camera Corp. v. NLRB, 340 U.S. 474, 487–488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The company has a particularly heavy burden where, as here, its challenge is primarily upon the Trial Examiner's credibility resolutions involving numerous witnesses for each side. NLRB v. Luisi Truck Lines, 384 F.2d 842, 846 (9th Cir. 1967).

The predominant source of the questioned rumors appears to have been Russell, who gave lengthy testimony at

---

of the ballots. Here, the notice was not forthcoming for approximately seven months.

7. The following extract shows that all the evidence was taken into account:
. . . I find in spite of inconsistencies and discrepancies in the testimony of many of the witnesses who testified, a gathering of some sort was held at Quinn's home and that employee Russell advocated violence against Rouse and Gray but that that suggestion was not adopted by the others present at the gathering; that Russell, nonetheless, spread a rumor of violence among a few employees who after the election reported the threats to management without ascertaining the truth or falsity of such threats; and that there is insufficient evidence that the employees were frightened by these rumors of violence, at least until after the election. Accordingly, there was no "general atmosphere among voting employees of confusion and fear of reprisal for failing to vote for or support the Union" and nothing to deter such employees from exercising their free choice at the election. There is nothing in the record to indicate that any employee was interfered with at the election poll. Even those to whom Russell repeated the alleged threats of violence on election day apparently cast their ballots freely and without hindrance. It is impossible to prevent irresponsible talk during an election campaign.

the consolidated hearing. The Trial Examiner had the chance to observe his demeanor, along with that of the other witnesses, many of whom gave sharply conflicting accounts. After finding that Russell did in fact spread rumors among several employees, the Trial Examiner determined that the election was a valid and free expression of the employees' wishes. This finding is well within the standard we stated in Intertype Co. v. NLRB, 401 F.2d 41, 46 (4th Cir. 1968), cert. denied, 393 U.S. 1049, 89 S.Ct. 686, 21 L.Ed.2d 691 (1969):

> . . . evaluation of the probable effect of the comment, in light of the totality of circumstances surrounding the election, is a function of the Board. To hold that an improper comment by one not subject to the control of either party must necessarily invalidate a representation election would constitute an unreasonably strict standard that might well prevent the holding of a valid election. *The test,* as enunciated in the various circuits, *is whether the rumor, even if improper, materially affected the election by precluding employees from exercising their own free choice.* [Emphasis added]

We believe the Board acted well within its discretion in overruling the company's objections concerning the election.

The petition to set aside the Board's order will be

Denied.

The cross-application for enforcement will be

Granted.

WIDENER, Circuit Judge (dissenting):

The opinion of the majority is based upon the initial premise that this is a case " . . . challenging the . . . long established procedure of consolidating for a single hearing objections to a representation election and charges of unfair labor practices."

It is further based, to a considerable extent, upon a finding by the majority that the conflict of interest arising from the admittedly "dual role" of the attorney for the government was "theoretical," and that his dual participation was "insufficient to establish such a degree of partisanship that would destroy the fairness of the hearing."

I must respectfully dissent both to the phrasing of the problem and the finding of such facts as to the conduct of the government's attorney,[1] which I submit are not supported by the record.

While the writing which follows will set out my conception of the legal setting of the case, I note here the record discloses that 59 [2] objections to testimony and motions to strike were made during the hearing. The government's attorney, who was obviously the leading counsel on that side of the dispute, lodged 34 objections to evidence, all to questions by the company's attorney, and none to questions by the attorney for the union. The union lodged 17 objections to evidence, all to company questions. Only to one of these objections did the government's attorney indicate that he felt the union's position was not well taken. The attorney for the government joined in none of the company's seven objections to evidence, and in 9 of the union's 17 objections, 7 of which were overruled. Thus, so far as the opinion of the majority is based on the finding that the government's attorney had only a theoretical conflict of interest, or that his degree of partisanship was insignificant, the record speaks to the contrary.

Some repetition of facts stated in the majority opinion is unavoidable. On the rulings of the Board and the Examiner.

1. I do not imply any personal or professional criticism of the attorney. He was simply put into an impossible position by

2. Obviously, one of these is a duplication.

April 22, 1970, the company filed four objections to the conduct of the election. They are: (1) an international union representative named Snodgrass told a gathering of 200–250 employees that union supporters should put kerosene in the lunch boxes of employees who would not join; (2) the employee Willie Quinn, a union advocate, held a meeting of seven other employees at which he informed them that they were to be the members of a violence club whose function it would be to intimidate any employee who would not join the union and stifle those actively opposing the union; (3) the union attempted to and did pay employees to advocate and vote for the union; (4) the union's regional director, Dixon, told a gathering of employees that a letter from the company to all employees wrongfully represented that at other plants the union had lost representation elections and in the one plant where they had won, men lost their jobs, there was a strike, and negotiations were still not completed.

These objections were investigated by the Regional Director of region 11 of the NLRB. In a report dated July 6, 1970, the Regional Director recommended that a hearing be held to resolve conflicting evidence regarding the issues raised by objections 1 and 2, and he further recommended that objections 3 and 4 be overruled.

The company filed its objections and exceptions to the report of the Regional Director. In its order of September 22, 1970, the NLRB construed the objections and exceptions as follows:

"Thereafter, on August 11, 1970, the Employer filed timely exceptions to the Regional Director's report, submitting that the Regional Director's recommendation that objections 3 and 4 be overruled should be rejected and that an evidentiary hearing should be directed on all the Employer's objections *as well as on the evidence of objectionable conduct not specifically included in the formal objections.*" [Emphasis added]

The order further directed a hearing using the following language:

" . . . Objection 4 is hereby overruled. However, the Employer's exceptions raise issues with respect to *both* Objection 3 *and alleged threats of violence and retaliation* which can best be resolved by a hearing. Accordingly,

It is Hereby Ordered that a hearing be held before a duly designated Hearing Officer *for the purpose of receiving evidence to resolve the issues set forth above,* as well as the issues raised by objections 1 and 2." [Emphasis added]

The manner in which the Board construed the company's objections and the language the Board used in directing a hearing become important in considering the company's argument that in the subsequent hearing the hearing officer wrongfully limited the evidence to the specific objections numbered 1, 2 and 3, and refused to consider threats of violence and retaliation not specifically alleged in those objections.

The Regional Director then ordered that the company's case challenging the election and the union's case challenging the discharge of employee Quinn be consolidated "in order to effectuate the purposes of the Act and to avoid unnecessary costs and delay." The company filed a timely motion to sever the proceedings, 29 C.F.R. § 102.33(d), which was denied. In that motion, the company called attention of the Board to the fact that the same attorney was representing the Board in both cases and his conflicting interests.

I consider first the company's argument that the hearing examiner wrongfully limited the scope of the hearing. The majority opinion disposes of this question by stating the belief that " . . . the company was permitted to put into the record, all the evidence it had to support its position." The record, however, does not support such belief, for who will ever know what evi-

dence was not offered in the face of the clearly erroneous ruling of the examiner which limited the scope of the hearing.[3]

To place this argument in its proper perspective, it should be pointed out that after the company filed its objections and exceptions to the election, but before the Regional Director had completed investigating such objections, the company submitted additional evidence of objectionable conduct which was not initially included in the objections filed by the company. The Regional Director's report does not show that he considered such additional evidence. In language which we have already quoted, the Board specifically noted and sustained this objection. After taking cognizance of the objection, the Board directed that a hearing be held to resolve the issues raised by it. However, with the support of the attorney for the government, the hearing officer construed the order so as to limit the hearing to the specifics of objections 1, 2 and 3. I believe the Board's order was a clear mandate for a hearing broader in scope than that conducted by the hearing officer. The Board contends that the company actually did get its evidence in, even though the trial examiner indicated that the scope of the hearing would be limited to the specifics of objections 1, 2 and 3. While it may be true that counsel was skillful enough to get some of his evidence before the examiner indirectly by bits and pieces, the ineffectiveness and prejudice of this method of introducing evidence through the back door is self evident.

This is especially true, as here, when the trier of fact has already indicated

3. Neither the record nor the majority opinion even suggest that the company acted in bad faith. In the absence of bad faith, in the face of a ruling limiting proof by the trier of fact, witnesses need not be called to make a formal offer of proof and ". . . *an appellate court must assume that the proof could have been made, and govern itself accordingly.*" Scotland County v. Hill, 112 U.S. 183, 186, 5 S.Ct. 93, 95, 28 L.Ed. 692 (1884). [Emphasis added].

The majority states that the company ". . . stated in its Response to Notice to Show Cause on General Counsel's Motion for Summary Judgment that the 'additional evidence' purportedly excluded by the Trial Examiner would have *consisted of the testimony of eight workmen.*"

Again, I am of opinion that the record does not support this finding. The record shows that the *eight affidavits* referred to in the majority opinion were filed with an exception to an earlier ruling by the Regional Director and were referred to by the company as having been so filed in the Response above spoken of by the majority. Far from stating that the eight affidavits set out the additional testimony, the Response, to the contrary, complained the ". . . Trial Examiner erred by refusing to allow Respondent to present witnesses and other relevant evidence as to 'alleged threats of violence and retaliation' . . . ."

Further, the Board, in its order of April 10, 1972, based its decision, at least in large part, on the astonishing statement that the company ". . . is not entitled to relitigate issues which were or could have been litigated in a prior representation hearing." And this, in the face of sustaining, in the same order, the erroneous ruling by the Examiner restricting the scope of the hearing in clear violation of the Board's previous order.

On the same subject, the clear inference by the majority that the Board considered all the relevant additional evidence is not, in my opinion, supported by the record. The quotation on page 196 of the majority opinion is taken from a footnote in the opinion of the Board dated September 29, 1971, some seven months before the order of the Board granting summary judgment against the company. When read in context, it is seen the quotation should refer to only the *testimony of two witnesses which was* being commented upon at that point in the footnote. Even assuming the quotation to be susceptible to the meaning attributed to it by the majority, its conclusion is not supported by the record for the Trial Examiner had previously and erroneously restricted the scope of the hearing. No one will ever know from this record what evidence might have been introduced had the Board's order of September 22, 1970 been complied with by the Trial Examiner.

that such evidence will not be considered. I am of opinion that the trial examiner should have received the evidence of additional threats of violence in accordance with the Board's order for a hearing. His action in not receiving such evidence is a clear violation of the order of the Board under which he acted.

Petitioner further contends that its rights were prejudiced by the consolidation of the cases below. In case number 11–CA–4257, the union charged that the company wrongfully discharged employee Quinn because of his support of the union. Case number 11–RC–3076 involved the company's objections to the representation election. With regard to consolidation, the rules and regulations of the NLRB, 29 C.F.R. § 102.33, provide as follows:

"(a) Whenever the general counsel deems it necessary in order to effectuate the purposes of the act or to avoid unnecessary costs or delay, he may permit a charge to be filed with him in Washington, D. C., or may, at any time after a charge has been filed with a regional director pursuant to § 102.10, order that such charge and any proceeding which may have been initiated with respect thereto:

(1) Be transferred to and continued before him for the purpose of investigation or consolidation with any other proceeding which may have been instituted in a regional office or with him; or

(2) Be consolidated with any other proceeding which may have been instituted in the same region."

The company does not attack all consolidation on its face; indeed, consolidation of cases is an approved practice of long standing. NLRB v. Dixie Shirt Co., 176 F.2d 969, 970 (4th Cir. 1949); 29 C.F.R. § 102.33(a)(2). As the company correctly points out, however, consolidation is proper only where the rights of the parties will not be prejudiced thereby.

See NLRB v. Chelsea Clock Co., 411 F. 2d 189 (1st Cir. 1969). Petitioner contends it was in fact prejudiced by the manner in which these consolidated cases were heard. Such prejudice, it is argued, resulted from the close relationship between the facts in each case and from the fact that the same lawyer represented the Board in both cases.

The Board's rules and regulations describe a representation hearing as follows:

"§ 101.20 Formal Hearing

(c) . . . The hearing, which is nonadversary in character, is part of the investigation in which the primary interest of the Board's agents is to insure that the record contains as full a statement of the pertinent facts as may be necessary for determination of the case. The parties are afforded full opportunity to present their respective positions and to produce the significant facts in support of their contentions."

Thus, the attorney for the Board in the representation case had the duty to insure that the record was as complete as possible with regard to the facts pertaining to that case. The NLRB Field Manual, § 1142.4, directs that the Board's counsel must exercise self restraint, be impartial, and display the appearance of impartiality.

Hearings on unfair labor charges are quite a different matter. Such a hearing is described by the Board's rules and regulations, § 101.10:

"The Government's case is conducted by an attorney attached to the Board's regional office, who has the responsibility of presenting the evidence in support of the complaint."

As counsel for the General Counsel in the unfair labor practice case, then, the attorney's duty was that of every lawyer in an adversary trial—to advocate his position. Impartiality is cast aside.

The conflict of interest of the government's attorney was particularly acute

here because of the close connection between the facts underlying the consolidated cases. For example, the conduct of employee Quinn was at issue in each case. The union, and the Board in the unfair labor practice case, claimed that Quinn was wrongfully discharged because of his pro-union activity. One of the company's main objections to the election was that Quinn had formed a violence club to intimidate anti-union employees. The company claimed Quinn was discharged for threatening fellow employees both before and after the election. To enhance his chances of success in the unfair labor practice charge, government counsel obviously would strive to resist the introduction of evidence tending to show any questionable conduct by Quinn. Yet, at the same time, it was his duty in the representation case to maintain neutrality as to the merits and to strive for the admission of such evidence because of his duty to insure as complete a record as possible. At the same time, the same government attorney would have to seek to introduce and exclude evidence of Quinn's violent proclivities.

Throughout the hearing, counsel for the Board and counsel for the General Counsel (the same lawyer) played the advocate. He objected frequently to the company's testimony as being repetitive, leading, hearsay and the like, which was in marked contrast to his almost entire absence of disagreement with the union's every contention. At one point, he successfully urged the trial examiner to strike certain testimony because it was being brought out during the case in rebuttal instead of during the case in chief. Such a position was wholly inconsistent with his duty to remain neutral and develop as complete a record as possible, as well as being inconsistent with the Board's stated purpose of obtaining a full statement of pertinent facts in representation election hearings, 29 C.F.R. § 101.20. The ruling just referred to concerned activity of one Dixon. On direct examination, one of the company's witnesses attributed a statement to Dixon, a union representative. Dixon denied making the statement. To rebut this, the company called another witness to identify Dixon as the speaker and incidentally repeat the statement. Relying upon the rule that such testimony should have been brought out during the company's evidence in chief, the examiner struck the testimony at the instance of the government's attorney. Leaving aside the propriety of such a ruling, even in an adversary proceeding, it is unquestionably erroneous in an investigatory, non-adversary proceeding. While I recognize that consolidation of representation election hearings with unfair labor practice hearings is frequently, or even usually, proper, and I do not say that the same lawyer may never represent the Board and the General Counsel in such proceedings, where, as here, the facts pertaining to both cases are closely related, and performance of duty in one role precludes its proper performance in another, I am of opinion that the same lawyer may not represent the government in both cases. The clear conflict of duty in a case such as this may dictate success on the one hand and failure on the other as its unavoidable consequence. Where the government's attorney sacrifices his neutrality for the role of advocate, I believe the other side is deprived of opportunity for a fair chance to present its case.

The record establishes that the Board's own rules were violated, under the facts here presented, by the assignment of the same attorney to represent the government in both cases where his duties necessarily conflicted; the government's attorney played the role of advocate throughout; the government abandoned its neutral position in representation hearings; the trial examiner made at least one ruling on material evidence at the instance of the government's attorney which was clearly erroneous; and the trial examiner violated the Board's order as to the scope of the representation hearing.

To decide the representation issue on such a record would be manifestly unfair and legally unsound because of the procedural errors which were committed in making up the record.

The company claims the conduct of the hearing as above set forth is a violation of procedural due process. I do not find it necessary to reach the constitutional question. Although a hearing may satisfy the rudiments of due process, it is nevertheless subject to scrutiny. The Board, like any other agency, must abide by its own rules, regulations and established procedures.[4] As stated by this court in NLRB v. Poinsett Lumber & Mfg. Co., 221 F.2d 121, 123 (4th Cir. 1955), (quoting NLRB v. Indiana & Mich. Elec. Co., 318 U.S. 9, 63 S.Ct. 394, 87 L.Ed. 579),

"The Act accords a great degree of finality to the Board's findings of fact, and this court has been insistent that the admonition of the Act be strictly observed. But courts which are required upon a limited review to lend their enforcement powers to the Board's orders are granted some discretion to see that the hearings out of which the conclusive findings emanate do not shut off a party's right to produce evidence or conduct cross-examination material to the issue. The statute demands respect for the judgment of the Board as to what the evidence proves. But the court is given discretion to see that before a party's rights are foreclosed his case has been fairly heard."

If it appears that a case has not been fairly heard, this court has the discretion and, indeed, the duty to correct abuses apparent from the record. Such abuse may be corrected on remand. General Steel Products v. NLRB, 445 F.2d 1350 (4th Cir. 1971); NLRB v. Poin-

sett Lumber & Mfg. Co., 221 F.2d 121 (4th Cir. 1955). I would remand this case to the Board with instructions that a new hearing on the objections to the election be conducted in accordance with the Board's rules and in accordance with its order of September 22, 1970.

---

4. W. G. Cosby Transfer & Storage v. Froehlke, 480 F.2d 498 (4th Cir., 1973); Brooks v. Clifford, 409 F.2d 700, 706 (4th Cir. 1969); United States v. Wilbur, 427 F.2d 947 (9th Cir. 1970); Smith v. Resor, 406 F.2d 141 (2nd Cir. 1969); Bonita, Inc. v. Wirtz, 125 U.S. App.D.C. 163, 369 F.2d 208 (1966); United States v. Orta, 305 F.Supp. 1073 (D.Puerto Rico 1969); Cf. Yellin v. United States, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957).