## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## DAL-TEX OPTICAL COMPANY, Inc., Respondent.

No. 19222.

United States Court of Appeals
Fifth Circuit.

Nov. 28, 1962.

---

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Melvin A. Pollack, Atty., N. L. R. B., Washington, D. C., for petitioner.

Emil Corenbleth, Dallas, Tex., for respondent.

Before TUTTLE, Chief Judge, and RIVES and JONES, Circuit Judges.

JONES, Circuit Judge.

A union [1] lost an election in which it sought to become the bargaining agent for employees of the respondent, Dal-Tex Optical Company, Inc. The respondent, Dal-Tex, has its place of business at Dallas, Texas. Its business is manufacturing optical supplies and equipment, principally optical lenses. The efforts at organization commenced in August 1959, and the election was held on October 30, 1959. There were 96 votes against the Union and 33 votes favoring it. Five ballots were challenged. The Union filed objections to the election. The Regional Director investigated, made a finding that Dal-Tex had interfered with the election by threats of loss of employment, and made a report recommending that the election be set aside. Dal-Tex filed its exceptions to the Regional Director's report. This was Case No. 16-RC-2571. Meanwhile the Union filed charges against Dal-Tex asserting that it had wrongfully discharged nine employees because of their activities on behalf of the Union. A complaint was made against Dal-Tex, not on the charge of wrongfully discharging employees but on the stated grounds of threats and promises. This is Case No. 16-CA-1325. These cases were consolidated and to this Dal-Tex objected.

The hearing of the consolidated 2571-1325 case was held on April 25–26, 1960. At the hearing Willie B. Green, Willis McNeely, Billy Rogers McNeely, Jesse Whitaker and Curtis Anderson appeared as witnesses in response to subpoena and all of them testified as witnesses for the Board's General Counsel except Anderson. On April 27, 1960, Green filed a

---

1. International Union of Electrical, Radio & Machine Workers, AFL–CIO.

charge that he had been discharged because of his testimony. This was followed by charges that Willis McNeely had been discharged, that the employment status of Billy Rogers McNeely and Jesse Whitaker had been discriminatorily changed, and that Curtis Anderson had been discriminated against by the giving to him of a violation slip, all because of their testimony in the No. 2571-1325 case. The complaint on these charges initiated the proceeding known as Case No. 16-CA-1358.

In the 2571-1325 hearing there was testimony of threats and promises made by Cornelia Banks and by Willie B. Green. Dal-Tex contended that Cornelia Banks was not a supervisor but the Examiner and the Board drew the inference, which was a permissible one upon the testimony, that she was employed in a supervisory capacity. Willie B. Green, who, for some reason or other, is better known in the record as Shaw Green, was conceded to be a supervisor and had worked as such in the shipping department of Dal-Tex for about seven years. On November 17, 1959, Green had given an affidavit to a field examiner of the Board in which he stated that during the week of the election he had been called to the office of Lester I. Pearle, Vice-President of Dal-Tex, who said he was doubtful of Jesse Whitaker, Billy Rogers McNeely, Willis McNeely, and three others and directed Green to tell them that if the Company lost the election these men would lose their jobs in one way or another. Green's affidavit recites that he delivered the message as directed but told his auditors that the Company was trying to scare them and it would be for their interest to vote for the Union. Said the affiant Green, "I will talk loud when talking for the Company, and talk low when talking about the Union." This affidavit closed with the significant statement that "I would tell the Company that I was for them, and then tell the Union I was for them. I want to stay in good with everyone." On December 16, 1959, Green and fourteen other supervisory employees of Dal-Tex signed and swore to an affidavit procured by Dal-Tex or its counsel in which it was set forth that he was told by Irving Greenberg, President, and Lester I. Pearle, Vice-President, of Dal-Tex, that he should not discourage union membership and should make no threats, and that he had not discussed any union or election matters with any of the Dal-Tex employees. On February 18, 1960, Green made a third affidavit reaffirming the first he made and stating that the second, which was untrue in part, was signed because of fear of losing his job. At the hearing Green's testimony conformed in substance to the affidavits given to the representatives of the Board. At the conclusion of Green's testimony, counsel for Dal-Tex represented that Vice-President Pearle was absent from Dallas, Texas, where the hearing was being held; that Shaw Green, by his testimony, had double-crossed Dal-Tex; that it was surprised; and that Pearle's testimony was necessary to show that Green's testimony was false. Dal-Tex moved that the case be kept open until the following day so that Pearle could be made available as a witness. The motion was denied. On April 26, 1960, a few hours after the hearing concluded, Green was discharged by Greenberg, the President of Dal-Tex.

Willis McNeely, a brother-in-law of Green, gave two weeks' notice that he was quitting to get a better job. The date he gave the notice is disputed. At the 2571-1325 hearing he testified that Green had told him that if Pearle found out they were for the Union he would find a way to get rid of them. On April 26, 1960, shortly after the hearing came to an end, McNeely was told that the following day would be his last day of work.

Jesse Whitaker had been an employee of Dal-Tex since 1953. In 1957 he was made a leadman and was paid a salary by the week rather than a wage by the hour. Salaried employees were not docked for time off for illness or emergencies as were hourly employees. Whitaker was under summons to testify at the Board

hearing and was present. Because of the belief of the Examiner that his testimony would be merely cumulative, he did not testify. On the day after the hearing Greenberg moved Whitaker from a salaried status to that of an hourly status, with no change in the base weekly pay. When Whitaker was off a day he was docked.

Billy Rogers McNeely is a brother of Willis McNeely. The job which Billy Rogers McNeely had with Dal-Tex was cleaning the front office. At the initial hearing he testified as to the threats made by Shaw Green. On the day after the hearing Greenberg had Billy transferred to the job of cleaning the central part of the building.

Curtis Anderson was a lens blocker for Dal-Tex. His job was to prepare lenses for grinding. He testified as to coercion and threats by Green. On the day after the hearing, he was given a violation slip for excessive breakage of lenses. His subsequent testimony was that he broke no more than usual nor any more than other blockers who were not given violation slips. The violation slip or notice stated that further violations might lead to suspension or discharge.

In the consolidated 2571-1325 case it was determined that Dal-Tex, by threats and promises made by its supervisory employees, created an atmosphere which made improbable the untrammeled freedom of choice in the election. The Board's order directed that Dal-Tex cease and desist from (a) threatening employees if they vote for the Union and promising them benefits if they vote against the Union; and (b) in like or related manner interfering with or coercing employees in the exercise of their rights to organize. The order directed the posting of an appropriate notice. The order also set aside the election and the Regional Director was authorized to conduct a new election. In the 1358 case the Board determined that although Green was a supervisor, he had been discharged

for refusing to coerce employees and for testifying against his employer and that such discharge was an unfair labor practice. The order incorporated the conventional cease and desist provisions. Dal-Tex was directed to reinstate Green, to rescind the warning given to Anderson, to restore Whitaker and Billy Rogers McNeely to their former positions and privileges, to make Green, Willis McNeely and Whitaker whole for any lost pay, and to post a notice in a prescribed form. The Board seeks enforcement of both orders.

■ The problems presented, for the most part, are whether the Board's findings are supported by substantial evidence on the record as a whole. Dal-Tex insists that the findings are not so supported and also urges other grounds for denying the enforcement of one or both orders. Dal-Tex complains of the consolidation of the cases 2571 and 1325 resulting in the consideration of the evidence in one case as evidence in the other. It does not point out to us how any prejudice to it has resulted from the consolidation and we find none. Related, in a way, to this question is the contention of Dal-Tex that the Board erred in setting aside the election on a ground asserted by the Regional Director and not contained in the charge of the Union. The Union objected to the election. The Regional Director investigated and recommended that all of the Union's objections, except one numbered V-3, be overruled. The Union's objection V-3 [2] was sustained by the Regional Director. During the investigation the Regional Director received information as to interference by Dal-Tex in threatening employees with the loss of jobs unless they voted against the Union. These matters were not specifically included in the Union's charge but were regarded by the Regional Director as grounds for setting aside the election. The Board agreed. Dal-Tex urges here, as it did before the Board, that consideration could not be

2. "Many employees were called into the Company's office, and talked to on election day, and more than half of the employees in the Edging Department, which has about forty employees, were called in the office."

given to matters not within the Union's charge. The matters uncovered by the Regional Director are of the same kind and related to those set forth by the Union. Under such circumstances there is an administrative jurisdiction permitting the Board to deal with the unfair labor practices even though not within the express language of the charge. N. L. R. B. v. Fant Milling Co., 360 U.S. 301, 79 S.Ct. 1179, 3 L.Ed.2d 1243.

 The refusal of the Examiner, and the Board's order sustaining him, to grant a continuance or keep the record open for testimony of Pearle to rebut the evidence given by Green, are urged as error by Dal-Tex. The granting or denial of an application is a discretionary matter and in the absence of a clear abuse of discretion a ruling on such an application will not be disturbed. 17 C.J.S. Continuances § 69, p. 242. No abuse of discretion is shown here. See International Union, etc. v. N. L. R. B., 7th Cir. 1956, 231 F.2d 237, cert. den. 352 U.S. 908, 77 S.Ct. 146, 1 L.Ed.2d 117; N. L. R. B. v. A. J. Siris Products Corporation, 4th Cir.1951, 186 F.2d 502.

It is contended, vigorously and plausibly, that Green was a supervisor and could be discharged with or without cause, or for any cause. A supervisor, although not regarded as an employee, is clearly protected from discharge or other reprisal for testifying in a labor proceeding where such discharge would restrain or coerce those who are regarded as employees in the exercise of their organizational rights. N. L. R. B. v. Better Monkey Grip Corporation, 5th Cir. 1957, 243 F.2d 836; N. L. R. B. v. Talladega Cotton Factory, Inc., 5th Cir. 1954, 213 F.2d 209, 40 A.L.R.2d 404. The supported findings of the Board bring the case before us within the principles announced in the cited cases.

As to the general insistence of Dal-Tex that the findings are not adequately supported, we think it is enough to say, without a further review of the testimony, that our conclusion is otherwise. It might seem difficult to see any

discrimination in a transfer of Billy Rogers McNeely from cleaning the front office to the cleaning of another part of the same building. But there is a difference and since one has been found we defer to the expertise of the Board and accept its determination that the difference was not de minimis and that there was a resulting injury or prejudice. There is, on the record as a whole, evidence to support the findings of the Board.

The Board's order will be

Enforced.