**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LEAS & McVITTY, INCORPORATED, Respondent.**

**No. 11194.**

United States Court of Appeals Fourth Circuit.

Argued June 21, 1967.

Decided Oct. 2, 1967.

Sobeloff, Circuit Judge, dissented.

Leonard M. Wagman, Atty., N. L. R. B., (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Warren M. Davison, Atty., N. L. R. B., on brief) for petitioner.

George V. Gardner, Washington, D. C., (Asa Ambrister, Washington, D. C., on brief) for respondent.

Before SOBELOFF, BRYAN and WINTER, Circuit Judges.

PER CURIAM:

The National Labor Relations Board found that Leas & McVitty, Incorporated, discharged Supervisor Luther Harrison from its Pearisburg, Virginia plant in violation of Section 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1). The decision required that he be reinstated and also that the company reimburse him for any loss of earnings suffered by reason of his discharge. 155 NLRB 389 (October 28, 1965). The Board now petitions for enforcement of this order, Section 10(e), 29 U.S.C. § 160(e), which we deny.

The predicate of the order was that the company had discharged Harrison in November 1964 because he had just previously testified for the Board's General Counsel in a representation proceeding involving his employer. The trial examiner, confirmed by the Board, held that the "effect of the discharge immediately after the conclusion of the representation hearing was to cause non-supervisory employees reasonably to fear that Respondent would take the same action against them if they testified against the Respondent in a Board proceeding to enforce their guaranteed rights under the Act." It would also, he thought, deny employees the advantage of calling a supervisor, whenever needed and available, to give evidence of their grievances. Although supervisors are excluded from the Act's protection, 29 U.S.C. § 152(3), as the discharge was considered an interference "with the employees' rights to seek vindication of their own statutory rights in Board proceedings", the discharge was declared an 8(a) (1) offense. See Oil City Brass Works v. N.L.R.B., 357 F.2d 466, 470 (5 Cir. 1966); N.L.R.B. v. Dal-Tex Optical Co., 310 F.2d 58 (5 Cir. 1962); N.L.R.B. v. Better Monkey Grip Co., 243 F.2d 836 (5 Cir. 1957), cert. den. 355 U.S. 864, 78 S.Ct. 96, 2 L.Ed.2d 69.

This reasoning is sound, we think, but we do not see substantial support in the record as a whole for the finding that the fact of Harrison's testifying was a cause of his firing and this, of course, is the determinative question here. N.L. R.B. v. Dal-Tex Optical Co., supra, 310 F.2d at 61. On the contrary, the substantial evidence, we think, shows that Luther Harrison was discharged for the very reason given at the time by the company, i. e., for not performing "his supervisory duties satisfactorily".

While a supervisor, after setting up an organizing committee in collaboration with the union representative, and on company time within the plant, Harrison solicited union memberships from the employees. On one day, September 18, 1964, he and his fellow committeemen "all went into the plant * * * with cards" and "we signed cards all during the day when there was anyone who would sign them". Harrison himself "signed up" 23. He so testified before the examiner in this case. In addition, Harrison threatened non-supervisory employees with loss of certain perquisites if they did not join the union. In the canvass he went into departments not his own. This conduct was in violation of company rules which had been promulgated and in force for some time prior.

This behavior was not known by the company until after Harrison had gone

to the hospital, September 24, 1964, where he remained until October 2. He was told by his doctor he could not go back to work until November 3, and then only for light work, with permission, however, to resume regular work on November 9. Meanwhile, the company was investigating the reports of Harrison's breaches of the rules.

Beginning on October 7, he made trips to the plant from time to time to pick up his weekly benefit checks from the company. Complaints were received by management from foremen that while on sick leave Harrison was seeking union memberships within the plant and in this was interfering with the work of the men. The plant manager advised him to stay away from the plant, and to go home and rest.

As a witness for the General Counsel Harrison attended the Board's representation hearings on October 15, 27 and 28 and November 16, 1964. He testified for the union on October 15 and was recalled to the stand by the company on October 28. The company rejected his continual requests, in October and early November, to come back to work, saying that it would not accept him until he was able to do full work and had been entirely released by his doctor. On November 11, Harrison transmitted to the company a letter from his doctor saying he could resume his old work on November 16, 1964.

He reported for work on that day but was told he could not check in, that the manager wanted to see him first. Nevertheless, he picked up his time card, "clocked in" and went to his regular place of work. There a company supervisor told him "not to start to work," that the manager had called instructing him to tell Harrison "to go home and he would let him [Harrison] know when to return to work." Harrison then went again to the representation hearing, where he requested the union official to ask the manager why he was not allowed to work. The manager's reply was that "he would have to look into the matter". Harrison then procured another letter from the

doctor stating his ability to work, took it to the plant the following day, and on the next wrote the company demanding his job back again effective November 19. On the latter day he received his termination notice.

These facts, almost undisputed, do not justify the conclusion that Harrison was discharged for testifying against the company. Nor is the requisite substantiality provided by the company's notice, posted in January 1965 during the Board's investigation of Harrison's discharge, that though the employees need make no statement or swear to any made to the investigators, any statement made should be truthful as it might become available to the company for cross-examination in the coming Board hearing. The examiner himself declined to rule it illegally coercive, and we decline to find it revealing in any way of the reason for Harrison's discharge some two months prior.

Petition for enforcement denied.

SOBELOFF, Circuit Judge, (dissenting):

With deference, I think the majority opinion confuses the respective functions of the Board and the court. My colleagues of course recognize that the Board's findings are not to be disturbed if there is substantial supporting evidence in the record as a whole. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Yet they declare that "*the* substantial evidence, we think, shows that Luther Harrison was discharged for the very reason given, at the time by the company * * *." (emphasis added.) The court treats the record as though a finding of substantial evidence supporting *its* conclusion ends the inquiry. It is not our province to determine whether the evidence satisfies us that Harrison was fired because he testified on behalf of the Union in a representation proceeding. Rather than substitute our judgment for the Board's on the cause of Harrison's discharge, we may examine the record only to see if there is substantial support

for the *Board's* conclusion. That the evidence might also justify an inference different from that of the Board does not enlarge our prerogative. Once it is ascertained that the Board's finding is premised upon substantial evidence, we must enforce its order. This is the true test. The rule governing judicial review of administrative agencies requires more tolerant treatment than the majority accords the Board's factual findings. I submit that in this instance the court views its function too broadly and the Board's role too narrowly.

Beyond peradventure, substantial support for the Board's findings exists in this case, even assuming that the court's finding is conceivably also supportable. Luther Harrison was fired on November 19, 1964, three days after he attended the union representation proceedings for the fourth and last time. On two previous occasions, October 15 and 28, he had testified in favor of the Union. Although the asserted cause of the discharge was his improper performance of supervisory duties, Harrison had never been accused of any misfeasance or warned of danger of dismissal. By its own admissions, the Company had never even proposed his discharge until after he had testified. Not only the sequence of events but also the Company's transparently trumped up excuse for the firing supports the Board's conclusion that the real reason for Harrison's dismissal was to punish him for his testimony, thereby tending to coerce employees in violation of section 8(a) (1).

To substantiate its charge of improper supervising, the Company cites Harrison's active solicitation on behalf of the Union and his insubordination on the morning of November 16 in punching his timecard, to resume his duties, despite an order to the contrary. The substantiated pro-Union activities complained of occurred prior to September 23, when Harrison entered the hospital for surgery, and were discovered by the employer before October 2, when he left the hospital. Despite this conceded knowledge, the Company never apprised Harrison of its displeasure and continued paying him sick leave throughout the month of October and the first two weeks of November, except for those days he attended the representation proceeding. Moreover, his pre-hospitalization union efforts occurred at a time when neither the Company nor Harrison himself considered him a supervisor. Not until after he testified in the representation proceedings did the company begin to regard him as a supervisory employee. Thus it is, paradoxically, that the Company now claims that it fired him because he was not a good supervisor at a time when it did not consider him a supervisor at all. This version the Board was not obliged to credit.

The insubordination charge, based on Harrison's reporting for work and "punching in," is similarly pretextuous. In the first place, the plant manager, at one point in his testimony, admitted that he and the general manager had discussed Harrison's discharge several days prior to the punching in. Furthermore, the question inevitably arises, why was Harrison told not to check in on this occasion? Why, now that he had a full medical discharge, did Harrison suddenly become *persona non grata* at the plant? This was the real issue before the Board. The Examiner found and the Board agreed that it was not Harrison's long-since terminated solicitations but his active, on-going offending participation in the representation proceedings which caused the discharge. Again, I do not maintain that this is the inexorable conclusion, but it is certainly a reasonable one, completely justified by the record.

The Trial Examiner and the Board certainly did not exceed the permissible inferences from the proven facts, in finding that Harrison's discharge was calculated to set a coercive example to other employees.

I would enforce the Board's order.