## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## W. R. GRACE & CO., CONSTRUCTION PRODUCTS DIVISION, Respondent.

No. 77-2907
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

April 13, 1978.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Elliott Moore, Deputy Assoc., N. L. R. B., William Stewart, Supervisor, Susan Stocking, John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Assoc. Gen. Counsel, Washington, D. C., for petitioner.

Andrew C. Partee, Jr., New Orleans, La., for respondent.

Before THORNBERRY, GODBOLD and RUBIN, Circuit Judges.

THORNBERRY, Circuit Judge:

This case is before the Court on the National Labor Relations Board's application for enforcement of its order against W. R. Grace & Co. For the reasons stated below, we enforce the bulk of that order.

The Board found that the company violated Section 8(a)(5) and (1) of the National Labor Relations Act[1] by failing to bargain with the union[2] during the pendency of company objections to the representation election in which the union was successful. Two issues are presented: (1) was the election valid, and (2) if so, did the company refuse to bargain?

The union filed a representation petition with the Board in February 1976, and an election was held on April 8. Nine ballots were cast, and the union "won" by the slimmest of margins, 5–4. The company filed timely objections to the conduct of the election, claiming that Board agents who conducted the election improperly denied an employee the right to vote. While this matter was pending, the union filed unfair labor practice charges on the ground that the company had unilaterally instituted various production and employment changes. The two issues were consolidated for a hearing before an administrative law judge (ALJ), who concluded that the election was invalid and, accordingly, that the company was under no duty to bargain with the union at the time in question. The Board reversed the ALJ.

## I. THE ELECTION

The election dispute centers around one Sanders Green, a maintenance employee who was temporarily filling a supervisory job until a new supervisor could be trained. Green had refused an offer to take the job permanently.

The company's plant manager omitted Green's name from the list of those eligible to vote in the representation election on the theory that he, like the other supervisors, was not a member of the bargaining unit. On the day of the election, Green appeared at the polling place, assuming that he was eligible to vote.[3] The Board agent conducting the election told him that his name was not on the eligibility list and asked him why he thought he was eligible to vote. Green responded that he thought he was eligible since "everybody else [was] voting." He then left the area, although he thought the Board agent "seemed to want to say something," and as he left he said "if I can't vote, I can't vote."

The company contends that the Board agent failed to investigate Green's employee status and did not offer him an opportunity to cast a challenged ballot, thereby depriving him of his right to vote in the election.[4] The ALJ agreed with this analysis and ordered a new election, since Green's vote obviously could have affected the outcome. The Board, however, determined that the Board agent's conduct was not improper and that Green voluntarily failed to exercise his right to vote. We conclude that this finding is supported by substantial evidence.

In *Shoreline Enterprises of America, Inc. v. NLRB,* 262 F.2d 933 (5 Cir. 1959), the court recognized that a Board agent is present not only to make sure eligible voters vote but also to make sure that an employee who thinks he is eligible may cast

---

1. 29 U.S.C. § 158(a)(5) & (1).

2. General Truck Drivers, Chauffeurs, Warehousemen and Helpers, Local 270 (associated with International Brotherhood of Teamsters).

3. The day before the election, Green asked the plant manager who had prepared the eligibility list if he were entitled to vote. He was told that "production and maintenance personnel are supposed to vote." However, the manager took no steps to amend the eligibility list, although he had the opportunity to do so at a meeting immediately before the election.

4. The ALJ determined that Green was eligible to vote since he was serving only temporarily as a supervisor. *See GAF Corp. v. NLRB,* 524 F.2d 492 (5 Cir. 1975). Our disposition of the case does not require consideration of this issue.

a challenged ballot. *Id.* at 946. Judge Wisdom, writing for the court, added:

> Where agents of the Board knew or had reason to believe that certain employees . . . were members of the unit, it was an abuse of the Board's discretion to take no steps to investigate and determine the eligibility of the employees in question.

*Id.* In the instant case, however, the agent had no reason to believe that Green was eligible, since his name was not on the eligibility list that had been prepared by the company. Moreover, Green, through his own actions, denied the agent the chance to further inquire into his status or to explain the challenged ballot procedure. In addition, it is clear that Green knew the absence of his name from the eligibility list was not the end of the matter, for he had cast a challenged ballot in a previous election while working for another employer.[5]

[1-4] We hold that Green's own testimony is ample evidence in support of the Board's conclusion that the Board agent did not act improperly and that Green "voluntarily and knowingly failed to exercise his legal right to cast a ballot." The fact that the ALJ reached a different conclusion from the same facts is irrelevant, for we are reviewing the Board, not the ALJ. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Moreover, the Board has been vested with wide discretion in representation matters, and its decision warrants special respect by reviewing courts. *Contract Knitter, Inc. v. NLRB,* 545 F.2d 967 (5 Cir. 1977). Accordingly, our review is limited to the reasonableness of such determinations and the substantiality of the evidence underlying them, and it does not matter that we might have reached different conclusions if the Board had resolved the case differently. *NLRB v. Handy Hardware Wholesale, Inc.,* 542 F.2d 935 (5 Cir. 1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2675, 53 L.Ed.2d 271 (1977); *NLRB v. Bancroft Mfg. Co.,* 516 F.2d 436 (5 Cir.

1975), *cert. denied,* 424 U.S. 914, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976).

## II. FAILURE TO BARGAIN

On May 20, 1976, while its objections regarding the election were pending, the company informed its employees that it was discontinuing the production of Monokote, a fire-proofing insulation material, because of economic considerations. Four employees were permanently laid off, effective immediately. On the following day, the company eliminated one of its three shifts, and subsequently made other shift changes. The union was given no prior notice of these actions and was not consulted in any way.

■ At the outset, we note that an employer who refuses to bargain on the ground that an election is invalid does so at his own risk; if the election challenge proves fruitless, an order by the Board based on the refusal to bargain will be enforced. *NLRB v. Laney & Duke Storage Warehouse Co.,* 369 F.2d 859, 869 (5 Cir. 1966). *See also General Electric Co. v. NLRB,* 400 F.2d 713 (5 Cir. 1968). In the instant case, the company took that risk, and its challenge to the election was unsuccessful. Thus, our inquiry is whether the company refused to bargain with the union.

■ It is well-settled that an employer violates its duty to bargain collectively when it institutes changes in employment conditions without first consulting the union. *NLRB v. Katz,* 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962); *NLRB v. Laney & Duke Storage Warehouse Co., supra.* As the court said in *NLRB v. J. P. Stevens & Co., Inc.,* 538 F.2d 1152, 1162 (5 Cir. 1976):

> The employer's power to alter working conditions in his plant is not contingent upon union agreement with his proposed change. The company has only to notify the union before effecting the change so as to give the union a meaningful chance to offer counter-proposals and counter-arguments.

---

5. Green testified that he had cast a challenged ballot while working for a potato chip company in 1966. He admitted knowing what a challenged ballot was and described the procedure utilized during the 1966 election. In its brief before this Court, the company chooses to deal with this testimony by ignoring it.

It is irrelevant that the company's action was based on compelling economic considerations. An employer is not required to forego needed changes, but he must first notify the union in order that the voices of those affected by the changes are heard. The union was given no notice of the changes in the instant case and thus had no opportunity to offer input into the decisional process. The failure to notify or refusal to bargain with the union over the effects of management decisions to limit production or otherwise alter operations violates Section 8(a)(5) and (1) of the Act. *NLRB v. Katz, supra; NLRB v. Amoco Chemicals Corp.*, 529 F.2d 427 (5 Cir. 1976); *NLRB v. Winn-Dixie Stores, Inc.*, 361 F.2d 512 (5 Cir.), *cert. denied*, 385 U.S. 935, 87 S.Ct. 295, 17 L.Ed.2d 215 (1966).

The company also complains that the remedy imposed in this case exceeds the Board's powers. The Board ordered that the company bargain with the union, upon request, about the effects of eliminating the production of Monokote; that the four employees who were laid off be paid their normal wages during that bargaining;[6] that the company, after consultation with the union, establish a preferential hiring list[7] containing the names of the four employees; and that the company offer them reinstatement should it resume production of Monokote. The company argues that the preferential hiring requirement and the order to offer reemployment amount to the Board's compelling agreement by the company to a substantive contractual provision. We agree.

The Board cannot "fashion remedies on the basis of an assumption as to what the parties would have agreed to absent an employer's failure to bargain in good faith." *Winn-Dixie Stores, Inc. v. NLRB*, 567 F.2d 1343, 1351 (5 Cir. 1978), *citing H. K. Porter Co. v. NLRB*, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970). *See also Tex Tan Welhausen Co. v. NLRB*, 434 F.2d 405 (5 Cir. 1970), *cert. denied*, 402 U.S. 973, 91 S.Ct. 1663, 29 L.Ed.2d 138 (1971). The Board has obviously made such an assumption with regard to the preferential hiring requirement and the reinstatement offer.

The other provisions of the Board's order present no such difficulties and are not challenged by the company. Accordingly, we modify the Board's order to eliminate the provisions regarding the preferential hiring list and offer of reinstatement. In all other respects, the Board's order is enforced.[8]

ENFORCED AS MODIFIED.

---

6. The order provides that the four employees receive their normal wages from five days after the date of the order until the occurrence of the earliest of the following conditions: (1) the company bargains to agreement; (2) a bona fide impasse is reached; (3) the union fails to request bargaining within five days of the order or to commence negotiations within five days of the company's notice of its desire to bargain; or (4) the subsequent failure of the union to bargain in good faith. The order also provides that in no event shall the employees receive more money than they would have earned from the time their employment was terminated until each secured equivalent employment elsewhere, or the date on which the company shall have offered to bargain, whichever occurs first. It is also provided that the employees will receive no less than the amount they would have earned for a two-week period at the rate of their normal wages.

7. Under the order, the preferential hiring list would follow a nondiscriminatory system, such as seniority.

8. The company also complains that the General Counsel's filing of exceptions in the unfair labor practice proceeding subverted the role of the Regional Office in the representation matter. This contention, which stems from the fact that the issues were consolidated for argument before the ALJ, is without merit. *NLRB v. Bancroft Mfg. Co., supra; Barrus Constr. Co. v. NLRB*, 483 F.2d 191 (4 Cir. 1973); *see also NLRB v. Dal-Tex Optical Co.*, 310 F.2d 58 (5 Cir. 1962).