816 F.2d 681
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
OAK RUBBER COMPANY, Plaintiff-Appellee,
v.
NATIONAL LABOR RELATIONS BOARD, Defendant-Appellant.
 Nos. 86-5096, 86-5185.
 United States Court of Appeals, Sixth Circuit.
 April 16, 1987.
 
 1
 Before JONES and ENGEL, Circuit Judges, and ALLEN, Senior District Judge.*
 
 ORDER
 
 2
 This case is before the Court on the application of the National Labor Relations Board's application for enforcement of its order issued in NLRB Case No. 8-CA 16442, and on the petition for review filed by the Oak Rubber Company.
 
 
 3
 The NLRB order directed the petitioner to cease and desist from refusing to collectively bargain with the Union with regard to any decision to relocate bargaining unit work from the Ravenna, Ohio, plant to Reynoldsburg, Ohio, and further directed the petitioner to refrain from refusing to bargain collectively with respect to the effects of transferring bargaining unit work from Ravenna, Ohio, to Reynoldsburg, Ohio. In addition, the order required among other things that the Company restore to the Ravenna, Ohio, plant the work previously performed at that facility by bargaining unit employees that had been transferred to Reynoldsburg, Ohio. It also provided for reemployment of any bargaining unit workers laid off as a result of the transfer of work and for back pay for such employees.
 
 
 4
 The petitioner is a manufacturer of balloons and other rubber products. It had always maintained its manufacturing facilities at Ravenna, Ohio. On March 23, 1982 the Company informed the Union of the possibility that some of the work then being done at Ravenna would be moved to another location. On May 6, 1982, the Company advised the Union that any work transferred would take place probably by the end of 1982 in Ohio but that a definite site had not been located. The Union was also informed at that time that packing, selling, printing, and finishing were Ravenna operations being considered for transfer.
 
 
 5
 On July 27, 1982, the Company's vice president, Robert Baird, wrote the Union president, Margaret Ward, requesting, in writing, any questions she had concerning the potential transfer. Ward responded two days later saying that there were rumors about relocation of some Ravenna work and set forth eleven questions about the proposed transfer. Baird responded to Ward's letter on July 30, 1982, and advised the Union that the Company was losing business to lower cost competition and that it was hoped that the Company could continue its present manufacturing operations in Ravenna and only relocate certain operations. He added that the contract would not be extended to apply to the new plant, although former employees establishing residence in the Columbus area would be considered for employment. He advised the Union that the move was planned for the last quarter of 1984, that four departments were being considered for relocation, that no new site had yet been bought, that the Company was not committed to move, and that the move was being made because the Company could not compete.
 
 
 6
 After further discussions in August 1982 in response to a memo from the Union's president asking Baird to spell out any proposals the Company had, Baird responded that the Company would need concessions amounting to $4.00 per hour in labor costs to be about equal between wages and benefits. It also expected less restrictive work rules.
 
 
 7
 On August 23, 1982, the Union suggested a 40 cents an hour reduction for the entire bargaining unit of about 280 employees. This reduction not to take place until January 1983 and to be accomplished by the Union's foregoing a contractual increase scheduled for that date. Baird rejected the Union's offer. It should be noted that the Union also proposed a 15 cents per hour decrease in benefits but that fact was not mentioned by the ALJ in his opinion.
 
 
 8
 On August 25, 1982, the Union rejected the Company's proposal of a $4.00 an hour reduction for the employees affected by the proposed transfer. That reduction would have been accomplished by a $2.00 per hour wage reduction and a $2.00 per hour benefit reduction.
 
 
 9
 On August 31 Baird notified Ward that the Company had completed negotiations for plant space in the Columbus area. On October 12 Ward wrote Baird requesting a meeting and bargaining over the decision to relocate and also over the effects of the decision. On October 20 Baird responded that the Company could not reconsider the move but that it was open for proposals and discussions on how to handle cutbacks and other matters and to talk to the Union about the effects upon the employees involved. Baird stated that the Company did not intend to transfer employees to the new location but would give preferred consideration to employees who established residence in the Columbus area. Baird went into details as to the effect of the move stating in part that 56 positions would be eliminated at Ravenna, the new plant would be located in Columbus, and that 45 people would be hired at the new location, the majority at $3.70 per hour and the more skilled ones to receive $6.00 an hour. He would concede that the Company had taken no formal market survey but reiterated that the wage scale at Ravenna was not competitive.
 
 
 10
 The Company began moving machinery on November 29, 1982, to the Reynoldsburg plant on which it had obtained a three year lease. The Union filed an unfair practice labor charge on January 26, 1982, having made no response to the letter of October 20.
 
 
 11
 The collective bargaining agreement between the Union and the Company contained the following language in Article I, Sec. 1(b):
 
 
 12
 The Management of the plant and the direction of the working forces, including [but not limited to] the right to plan, direct, and control plant operations * * * [and] to change existing production methods or facilities is vested exclusively in the company, except to the effect that such rights are necessarily modified or restricted by this Agreement.
 
 
 13
 Three basic questions are presented by this appeal:
 
 
 14
 1. Does the collective bargaining agreement give the Company the right to relocate without bargaining with the Union?
 
 
 15
 2. Did the Company have a duty to bargain with the Union over the effects of the decision to relocate?
 
 
 16
 3. Did the Company bargain in good faith with the Union over the effects of the relocation?
 
 
 17
 We are of the opinion that the Board's findings are legally erroneous insofar as they pertain to the decision to relocate. The language contained in Article I, Sec. 1(b) of the collective bargaining agreement specifically gives the Company the right to change existing production methods or facilities. It is obvious that the relocation from the Ravenna plant to the Reynoldsburg plant of certain of the Company's operations constitutes a change of facilities.
 
 
 18
 In the case of International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. NLRB, 765 F.2d 175 (1985), affirming Milwaukee Spring Division of Illinois Coil Spring Co., 265 NLRB 206 (1982), the management rights clause included the right of the company to introduce new and improved methods, materials or facilities or to change existing methods, materials or facilities. The court held that this clause granted to the company the contractual right to make a relocation decision. Furthermore, since there was no anti-union animus, there was nothing in Section 8(d) of the NLRB Act to prevent the Company from deciding to relocat unilaterally.
 
 
 19
 The management rights clause entered into by the parties to this action is equivalent of the clause involved in International Union and as both confer upon the employer the right to relocate unilaterally no violation occurs when such a decision is made. In the case of International Union United Automobile Workers v. Lester Engineering Co., 718 F.2d 818 (6th Cir.1983), the collective bargaining agreement gave the company the right to decide the number and location of its plants, the production to be manufactured, and the methods and processes of manufacturing. It also provided that if a plant should be moved within a radius of 75 miles of Cleveland, the agreement would continue in full force and effect. The court in Lester stated that the company rights clause of the agreement clearly gave Lester the unilateral right to close its facilities. We believe that Lester is additional authority for our holding that the appellant had the unilateral right to transfer some of its operations to Reynoldsburg.
 
 
 20
 The authorities are clear that there is a duty to bargain over the effect of a decision to relocate even if there is no duty to bargain concerning the decision itself. See First National Maintenance Corp. v. NLRB, 452 U.S. 666 (1981), and Penn-Tech Papers, Inc. v. NLRB, 706 F.2d 18 (1st Cir.1983), cert denied, 464 U.S. 892 (1983). The reasoning offered in support of the finding was that the Company had already predetermined what should be done about the relocation of former employees. However, the evidence is to the effect that the Company had notified the Union on July 30, 1982, that any former employees establishing residence in the Columbus area would be considered for employment but not at the hourly rate established for them in Ravenna. Also, while the Company on October 20, 1982, stated that it did not intend to transfer employees to the new location, it would give preference consideration to employees who established residence in the Columbus area. Even though the Company seemed to have taken a firm stand on the question of relocation of former employees, it specifically offered on October 20 to bargain concerning the effects of the relocation decision. The Union made no response to that offer and five weeks later the Company began to move the machinery into the plant at Reynoldsburg. We believe that under those circumstances, the Company's intentions might have been modified had the Union explored the question of relocation. Be that as it may, it is obvious that the Company had not already implemented its decision when it made the offer to bargain over the effects, and therefore, cases such as NLRB v. W.R. Grace & Co., 571 F.2d 279 (5th Cir.1978), and Universal Sec. Instruments, Inc. v. NLRB, 649 F.2d 247 (4th Cir.1981), cert. denied, 454 U.S. 965 (1981), are not applicable.
 
 
 21
 In conclusion, we hold that the order of the ALJ and of the Board was erroneous in all respects and therefore the petition of the Board for enforcement of the order is denied.
 
 
 22
 JONES, Circuit Judge, concurring in part and dissenting in part.
 
 
 23
 While I am in agreement with the majority that the Company was under no obligation to bargain with regard to its decision to relocate its plant, I disagree with the majority's holding that the Company fulfilled its duty to bargain with respect to the effects of its decision to relocate. Therefore, I dissent from the majority's denial of the Board's petition for enforcement.
 
 
 24
 Preliminarily, I note the well-settled rule that the findings of fact made by the Board are conclusive "if supported by substantial evidence on the record considered as a whole." 29 U.S.C. Sec. 160(e)(1982); Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). A reviewing court may not displace the Board's choice between two conflicting views, even though the court could justifiably have made a different choice if the matter had been before it de novo. Universal Camera, 340 U.S. at 488. The question of whether the parties have bargained in good faith is one that is particularly well-suited to resolution by the Board. See NLRB v. Insurance Agents' Int'l Union, 361 U.S. 477, 498 (1960). It has been aptly noted that "few issues are less suited to appellate judicial appraisal than evaluation of bargaining processes or better suited to the expert experience of a board which deals constantly with such problems." Dallas General Drivers v. NLRB, 355 F.2d 842, 844-45 (D.C.Cir.1966).
 
 
 25
 Although the majority correctly notes that there is a duty to bargain over the effect of a decision to relocate even if there is no duty to bargain over the relocation issue itself, see First Nat'l Maintenance Corp. v. NLRB, 452 U.S. 666, 681-82 (1981), I believe that it incorrectly concludes that the Company fulfilled its duty in this instance. The hearing officer, who listened to a great deal of testimony and reviewed all of the evidence, found that the Company had failed to bargain in good faith concerning the effects of the relocation decision. The officer noted that the Union president had specifically requested to bargain over the effects of the relocation. According to the hearing officer, the Company responded to this request in the following manner:
 
 
 26
 Faced with a demand for bargaining over effects, the [Company] was under an obligation to do something more than present the Union with a list of predetermined effects and ask for Union comment. This is all that happened between these parties between October 12 and November 29, when the actual move began. Having determined the fate of Ravenna employees, their relocation privileges vel non, and their manner of absorption into the rest of the Ravenna plant before bargaining to impasse or before bargaining at all, the [Company] ... violated ... the Act.
 
 
 27
 App. at 21. In order to satisfy its obligation to bargain in good faith, an employer must bargain "in a meaningful manner and at a meaningful time...." First Nat'l Maintenance, 452 U.S. at 682. An employer provides no meaningful opportunity to bargain when it provides " '[n]otice of a fait accompli ' regarding a matter as to which [it] is obligated to bargain to impasse." Soule Glass and Glazing Co. v. NLRB, 652 F.2d 1055, 1084 (1st Cir.1981).
 
 
 28
 The Company contends that the lack of effects bargaining is attributable to the Union's failure to act. The record does not support the Company's position. In a letter dated October 12, the Union president asked the Company to bargain about permitting the affected employees to transfer to the new location. In a letter dated October 20, the Company responded that it did not intend to transfer any Ravenna employees to the new location. The Company did state that it would give preferred consideration to the applications of any Ravenna employees who established residency at the new location, but only at wage and benefit levels prevailing there. It was in this letter that the Board found that the Company had merely announced to the union the "predetermined effects" of its relocation decision, that being that Ravenna employees would not be transferred to the new plant or be given preference for the jobs at the new location. About one month later, on November 29, without any further discussions or negotiations, the Company began moving to the new location. The Company's announcement of a fait accompli, combined with its lack of discussion or negotiation over the key issues that needed discussion, indicates that it lacked serious intent to adjust differences and to reach an acceptable common ground. See Insurance Agents', 361 U.S. at 485. Serious intent requires " 'an open and fair mind, and a sincere purpose to find a basis of agreement." ' NLRB v. Triumph Curing Ctr., 571 F.2d 462, 473 (9th Cir.1978) (quoting NLRB v. Holmes Tuttle Broadway Ford Inc., 465 F.2d 717, 719 (9th Cir.1972)). Such sincere purpose on the part of the Company is precisely what is absent in the instant case.
 
 
 29
 The majority views the Company's announcement of a fait accompli as nothing more than a "firm stand." The majority further states that the Company's intention might have been modified if the Union had more actively pursued bargaining. The Board, however, reached the opposite conclusion and placed the responsibility for the absence of bargaining squarely on the Company. The Board has been given great flexibility in determining whether the parties have bargained in good faith. See Insurance Agents, 361 U.S. at 498. We, as an appellate court, are precluded from displacing the Board's finding on this issue simply because we might have made a different choice if we had examined the issue de novo. Our inquiry is simply whether there is substantial evidence to support the Board's finding. The majority fails to abide by this well established standard. I think it clear that there was substantial evidence supporting the Board's finding. Therefore, I would grant the Board's petition for enforcement in part.