# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 29, 2023

Lyle W. Cayce
Clerk

---

No. 22-60442

---

The Atlantic Group, Incorporated,

*Petitioner—Cross-Respondent*,

*versus*

National Labor Relations Board,

*Respondent—Cross-Petitioner*.

---

Appeal from the National Labor Relations Board
Agency Nos. 16-CA-260413,
16-CA-262499, 16-CA-263091,
16-CA-263222

---

Before Higginbotham, Graves, and Douglas, *Circuit Judges*.

Per Curiam:[*]

The Atlantic Group petitions for review of a National Labor Relations Board ("NLRB" or the "Board") decision finding it violated Sections 8(a)(5) and (1) of the National Labor Relations Act ("NLRA" or "the Act") by laying off unit employees without providing the International Brotherhood of Electrical Workers, Local Union 220 (the "Union") prior notice and an

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

opportunity to bargain and by refusing to bargain with the Union while its request for review was pending. The Board further found that the Atlantic Group violated Section 8(a)(1) of the NLRA by threatening employees with job loss if they selected the Union as their bargaining representative. The NLRB cross-applies for summary enforcement of the Board's order. Because substantial evidence supports the Board's decision, we ENFORCE the order in full.

## I.

### A.

The Atlantic Group, a subsidiary of Day & Zimmermann, provides maintenance and modification services to several dozen nuclear and fossil-fuel powerplants. In late January of 2020, the Atlantic Group began a five-year contract to perform maintenance work at the Comanche Peak Nuclear Power Plant in Glen Rose, Texas.

The plant, owned and operated by Luminant Generation Company, contains two nuclear reactors. When the plant is "online," or generating electricity, the Atlantic Group's "core" employees provide services including mopping floors, cutting grass, building scaffolds, painting, and repairing air conditioning units. When the plant is "offline" for maintenance, and not generating electricity, a separate group of temporary employees work on distinct tasks specific to plant-shutdown periods.

Shortly after the Atlantic Group began operations at the plant, in early February, the employees started a campaign to be represented by the Union. Later that month, the Union filed a petition with the NLRB's regional office to represent the Atlantic Group's "core" employees, specifically excluding the outage employees. After approval by the NLRB's Regional Director, a mail ballot election commenced on April 20, 2020.

No. 22-60442

At some point prior to the election, Jerry Bales, the site superintendent, addressed a group of bargaining-unit employees at an on-site meeting, making comments indicating that employees would be left jobless if they proceeded with the Union. Shortly after Bales' remarks, the mail-ballot count was held on May 29, 2020. A majority of votes were cast in favor of union representation. On June 8, 2020, the NLRB's Regional Director certified the Union as the exclusive collective-bargaining representative of the unit employees. About two weeks later, the Atlantic Group filed a request for review of the certification with the Board.

On June 22 and 25, 2020, the Union requested in writing that the Atlantic Group recognize and bargain with it, and provide information needed for collective-bargaining purposes. On June 30, the Atlantic Group informed the Union that it would refuse to recognize, bargain with, or provide information on the grounds that its challenge to the results of the representation election was pending before the NLRB.

Following certification, in July 2020, bargaining-unit electricians David Smith and Jose Mendez, who worked for the Atlantic Group since it began operations at the plant in January, were assigned to a project involving the replacement of air compressors. After Luminant informed the Atlantic Group that the project was delayed, the Atlantic Group issued a layoff notice to Smith on July 16, and to Mendez on July 20, citing a lack of work. The Atlantic Group did not notify the Union in advance of these layoffs, nor provide the Union an opportunity to bargain over them. From the time work commenced at Comanche Peak in January 2020 through July 2020, four other layoffs occurred: Teressa Milton, Bradley Sutter, James Foos, and Joe Ortiz. Milton, Bradly, and Foos (the "lake employees") were employed helping the public utilize the lake facility for boating and fishing and were terminated at the onset of the COVID-19 pandemic. Ortiz, an insulator journeyman, was laid off due to lack of work at the end of an outage period.

No. 22-60442

On September 2, 2020, the Board denied the Atlantic Group's request for review of the Regional Director's decision. Finally, on October 2, 2020, the Atlantic Group agreed to recognize and bargain with the Union, and the parties agreed to meet to begin formal negotiations for a collective-bargaining agreement.

**B.**

Based on the foregoing credited facts, the Board found, in agreement with the ALJ, that the Atlantic Group violated Section 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1), by threatening employees with job loss, and violated sections 8(a)(5) and (1) of the Act,[1] 29 U.S.C. §§ 158(a)(5), (1), by failing to recognize and bargain with the Union and by failing to furnish and/or unreasonably delaying in furnishing the Union with requested, relevant, and necessary information.[2] A majority of the Board further found in agreement with the ALJ that the Atlantic Group violated Sections 8(a)(5) and (1) of the Act, 29 U.S.C. § § 158(a)(5), (1), by firing employees Smith and Mendez without giving the Union prior notice and an opportunity to bargain.

The Board ordered the Atlantic Group to cease and desist from the unfair labor practices found and from, in any like or related manner,

---

[1] A section 8(a)(5) violation produces a derivative violation of section 8(a)(1). *Allied Chem. & Alkali Workers of Am. v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 163 n. 6 (1971).

[2] As noted by the NLRB, the Atlantic Group fails to challenge the Board's finding that it violated Section 8(a)(5) and (1) of the Act by failing to furnish and/or timely furnish the Union with requested information. Accordingly, the NLRB requests summary enforcement of the corresponding portion of the Board's order requiring the Atlantic Group to furnish this information. By failing to address the violation in its brief, the Atlantic Group has waived any argument against this unfair-labor practice and the Board's order to this point is summarily ENFORCED.

No. 22-60442

interfering with, restraining, or coercing employees in the exercise of their rights under Section 7 of the Act, 29 U.S.C. § 157. The order requires the Atlantic Group to: offer Smith and Mendez reinstatement to their former jobs or to substantially equivalent positions if those jobs no longer exist; make them whole for any loss of earnings and benefits; compensate them for any adverse tax consequences of a lump-sum backpay award; remove from its files any reference to the unlawful layoffs; recognize and, on request, bargain with the Union; furnish in a timely manner the information requested by the Union on June 22 and 25, 2020, to the extent that it has not already done so; and post a remedial notice.

## II.

The Court will enforce the NLRB's decision if it is reasonable and supported by substantial evidence in the record as a whole. *Strand Theatre of Shreveport Corp. v. NLRB*, 493 F.3d 515, 518 (5th Cir. 2007) (citation omitted); *see* 29 U.S.C. § 160(e) ("The findings of the Board with respect to questions of fact if supported by substantial evidence in the record considered as a whole shall be conclusive."); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 491 (1951). Substantial evidence is "such relevant evidence as a reasonable mind would accept to support a conclusion." *Universal Camera*, 340 U.S. at 477; *see also Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 377 (1998) (substantial evidence requires a degree of evidence that "*could* satisfy a reasonable factfinder"). "Reasonable inferences drawn by the Board from its findings of fact may not be displaced even if the court might have reached a different view had the matter been before it *de novo*." *United Supermarkets, Inc. v. NLRB*, 862 F.2d 549, 551 (5th Cir. 1989). Said differently, this court will not "reweigh the evidence, try the case *de novo*, or substitute [its] judgment for that of the Board even if the evidence preponderates against the [Board's] decision." *El Paso Elec. Co. v. NLRB*, 681 F.3d 651, 656 (5th Cir. 2012) (internal quotation and citation omitted).

No. 22-60442

## III.

## A. Layoff Charge

The Atlantic Group argues that the Board lacked substantial evidence to conclude that it made a unilateral change by laying off Smith and Mendez. It claims that it demonstrated a past practice of layoffs based on having laid off ten percent of its workforce due to "lack of work" since it began work in January.  Further, it claims it has demonstrated a past policy of layoffs based on its employee handbook and employment agreements.  The NLRB counters that substantial evidence supports the Board's finding that the layoffs of Smith and Mendez were fundamentally different than the other layoffs at the company, and that the handbook and employment agreements were ambiguous and failed to establish a past policy.

Layoffs are a mandatory subject of bargaining, and employers are required to provide unions with notice and an opportunity to bargain before laying off unit employees.  29 U.S.C. § 158(d) ("[T]he duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract" without following appropriate bargaining procedures.).  An employer's failure to provide notice and an opportunity to bargain over the layoffs ordinarily constitutes a unilateral change in violation of Sections 8(a)(5) and (1). *See Cascades Containerboard Packaging*, 370 NLRB No. 76, slip op. at 1 fn. 1 and 15 (2021); *NLRB v. W.R. Grace & Co.*, 571 F.2d 279, 282 (5th Cir. 1978) ("It is well-settled that an employer violates its duty to bargain collectively when it institutes changes in employment conditions without first consulting the union.").  However, an employer may defend against a unilateral change allegation by establishing that its actions were in accordance with its past practice and thus do not constitute a change at all. *See Bemis Co.*, 370 NLRB No. 7, slip op. at 1 fn. 3 (2020); *see generally NLRB v. Katz*, 369 U.S. 736 (1962).  In other words, the question is "whether

the employer's action is similar in kind and degree to what the employer did in the past." *Raytheon Network Centric Sys.*, 365 NLRB No. 161, slip op. at 13 (2017). If it did not "materially vary in kind or degree," a past-practice defense may apply. *Id.* In those circumstances, the employer has the burden of showing that its prior actions were similar in kind and degree, and that they occurred with such regularity and frequency that employees could reasonably expect the practice to recur on a consistent basis. *See id.*; *NLRB v. Allis-Chambers Corp.*, 601 F.2d 870, 875 (5th Cir. 1979).

The Board determined that the Atlantic Group had failed to meet its burden of establishing the existence of a past practice applicable to layoffs. Relying on the testimony of Kevin Crabtree, the Atlantic Group's site supervisor, the Board noted that it is undisputed that Smith and Mendez were laid off "due to lack of work" when their air compressor replacement project was delayed. First looking at the termination of the lake employees, the Board concluded that their termination was different in kind than that of Smith and Mendez. Because the lake facility closed to the public during the pandemic, Crabtree testified to the uncertainties underlying the layoffs, noting that their change of status forms included a notation that they were "laid off due to COVID-19." The Board concluded that "the layoffs of the lake employees were different in kind from those of Smith and Mendez, as they were not due to the fluctuations in the Respondent's workload or any standard business and economic considerations but instead to the distinctive and unforeseeable effects of the COVID-19 pandemic."

The Board noted that COVID-19 represented an "extraordinary circumstance," citing cases in which it has stressed the uniqueness of the pandemic. *See, e.g., Aspirus Keweenaw*, 370 NLRB No. 45 (2020) (recognizing the COVID-19 pandemic as an "extraordinary circumstance"); *NP Palace LLC d/b/a Tex. Station Gambling Hall and Hotel*, 370 NLRB No. 11, slip op. at 3 (2020) ("Nor does the Employer have any 'past practice'

relating to laying off employees in the face of an unprecedented pandemic."). In sum, the Board concluded that a past practice of laying off employees due to lack of work from a project delay was distinguishable from layoffs due to the "unique circumstances of pandemic-related shutdowns." Further, the single layoff of Joe Ortiz during due to lack of work during the relevant time period did not demonstrate a past practice because "a single layoff, by itself, cannot demonstrate a past practice." (citing *Tri-Tech Servs., Inc.*, 340 NLRB 894, 895 (2003)).

The Atlantic Group also pointed to their employee agreements and manual to establish a past policy. The employee agreements stated: "I understand and fully agree that my employment with Day & Zimmermann is contingent upon successful completion of my background investigation and any training required. I also understand that my employment is conditional upon client approval of qualifications and staffing needs." The relevant portion of the handbook stated that "All non-staff, craft positions are temporary, varying in length according to contract duration." The Board concluded that the provisions were ambiguous, noting that the employee agreements appear to speak only to the initial hiring period, the manual describes employment as temporary and based on contract duration, and neither spoke to layoffs.

The Atlantic Group points to the Board's treatment of *800 River Rd. Operating Co., LLC d/b/a Care One at New Milford*, 369 NLRB No. 109 (2020) as proof of reversible error, arguing that the decision is analogous to the instant case. But the Board addressed *800 River Rd.* and concluded that it was inapposite as it spoke to disciplinary policies, not layoffs. The Board in *800 River Rd.* determined that the correct analysis of whether an employer maintains the status quo or enacts unilateral change is whether "an employer's individual disciplinary action is similar in kind and degree to what the employer did in the past within the structure of the established policy or

practice." 369 NLRB No. 109, slip op. at 5. Here, the Board chose not to rely on *800 River Rd.*, but regardless, the decision supports its findings here. The Board considered the facts and concluded that the layoffs of Smith and Mendez were not similar in kind and degree to its past layoffs of the lake employees.

The Atlantic Group also relies on *Mike-Sell's*, 368 NLRB No. 145, slip op. at 4 (2012), for the proposition that to establish a past practice, actions must be frequent, recurrent, and similar "such that employees would recognize an additional action as part of a familiar pattern comporting with the Respondent's usual method" of conducting business. This too supports the Board's determination, however, as layoffs due to COVID-19, an unforeseen and unprecedented global pandemic, are unlikely to establish a *familiar pattern* of termination due to lack of work from Luminant.

It was reasonable for the Board to conclude, based on the evidence presented, that the Atlantic Group had failed to meet its burden to prove that it had a past practice or policy of laying off workers due to lack of work. Reasonable inferences drawn by the Board from its findings of fact may not be displaced, even if we would have found something different *de novo*, and even if the evidence preponderates against the Board's decision. *United Supermarkets*, 862 F.2d at 551; *El Paso Elec. Co.*, 681 F.3d at 656. The Board's decision as to the layoff charge is therefore enforced.

## B. Threats and Intimidation Charge

Again, the Atlantic Group argues that the Board's decision that it violated Section 8(a)(1) of the NLRA by threatening employees with job loss is not supported by substantial evidence, contending that the Board failed to consider the totality of the circumstances and that Section 8(c) and the First Amendment establish a right to express opinions about the possible consequences of unionization. The NLRB counters that an authentic

transcript and recording of the meeting at issue establishes that an admitted company agent and supervisor told employees that voting for union representation would result in job loss within six months and the loss of the contract supporting their employment.

Under Section 8(a)(1), an employer commits an unfair labor practice when it "interfere[s] with, restrain[s], or coerce[s] employees in the exercise of the rights guaranteed" by the Act. 29 U.S.C. § 158(a)(1). Relevant here, an employer violates Section 8(a) by threatening employees with job loss if they select a union as their bargaining representative. *See NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969); *NLRB v. McCullough Envtl. Servs.*, 5 F.3d 923, 930-31 (5th Cir. 1993). The test for whether the employer's conduct violates Section 8(a)(1) is an objective test that asks whether, under the totality of the circumstances, the conduct had a reasonable tendency to coerce or interfere with employees' rights, not whether employees are actually coerced. *See NLRB v. Brookwood Furniture, Div. of U.S. Indus.*, 701 F.2d 452, 459 (5th Cir. 1983); *TRW-United Greenfield Div. v. NLRB*, 637 F.2d 410, 415-16 (5th Cir. 1981). While some employer speech is protected, threats and intimidation are not. As the Supreme Court explained in *Gissel*, 395 U.S. at 618-19:

> [A]n employer is free to communicate to his employees any of his general views about unionism or any of his specific views about a particular union, so long as the communications do not contain a "threat of reprisal or force or promise of benefit" …. [An employer] may even make a prediction as to the precise effects he believes unionization will have on his company. In such a case, however, the prediction must be carefully phrased on the basis of objective fact to convey an employer's belief as to demonstrably probable consequences beyond his control or to convey a management decision already arrived at to close the plant in case of unionization.

If an employer makes an economic prediction regarding the consequences of unionization, "the prediction must be carefully phrased on the basis of objective fact" and "convey an employer's belief as to demonstrably probable consequences beyond [its] control." *Gissel*, 395 U.S. at 618; *see also TRW-United*, 637 F.2d at 419.

The Board concluded that the Atlantic Group violated Section 8(a)(1) of the Act by threatening employees with job loss if they selected the Union as their bargaining representative. It noted that the record clearly established that Jerry Bales, the site superintendent, threatened employees with job loss by stating to employees at a meeting that "if this group … tries to go union, I do not believe that anybody in this room will have a job in six months" and "if we go union, that the client will pick another contractor." Furthermore, the Board noted that the First Amendment and Section 8(c) of the Act did not protect Bales' speech, pointing out that the Atlantic Group had failed to show that Bales' predictions — that the employees would be out of a job and a contract — were based on objective fact.

We enforce the Board's decision as to the threats and intimidation charge, where there is no evidence that Luminant ever told the Atlantic Group that it would or even could cancel its contract prior to the completion of the five-year term if the employees unionized, nor is there evidence that Luminant has ever cancelled a contract due to unionization. Instead, as the Board emphasized, Bales referenced unspecified people at unspecified times in an unsubtle effort to coerce employees to vote against unionization.

## C. Refusal to Bargain Pending Request for Review Charge

Finally, the Atlantic Group argues that it has a right to file a request for review and claims that if it had voluntarily bargained with the Union while that request was pending, the Board would find waiver of its statutory right to appeal. The NLRB contends that the Atlantic Group has conceded that it

refused to bargain with the Union without a valid excuse and at its own peril for months.

Section 8(a)(5) of the Act makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). Absent compelling economic circumstances, not present here, an employer's bargaining obligation commences on the date of the union's victory in a Board-conducted election. *W.R. Grace & Co.*, 571 F.2d at 282. Further, "an employer is not relieved of that obligation pending Board consideration, or reconsideration, of a request for review" of the certification of the union issued after an election. *Benchmark Indus., Inc.*, 262 NLRB 247, 248 (1982), *enforced mem.*, 724 F.2d 974 (5th Cir. 1984). An employer who relies on its filing of a request for review in refusing to bargain with the certified union acts at its peril. *See NLRB v. Allis-Chalmers Corp.*, 601 F.2d 870, 874 (5th Cir. 1979); *W.R. Grace & Co.*, 571 F.2d at 282. This is so because if the review process does not vindicate the employer's position regarding certification, the employer is liable for its refusal to recognize and bargain from the inception of the bargaining obligation. *W.R. Grace & Co.*, 571 F.2d at 282; *Allis-Chambers*, 601 F.2d at 874.

The record establishes, and the Atlantic Group concedes, that despite the tally of ballots establishing that the Union won the election, and the subsequent certification of the Union, it refused to bargain with the Union for several months. In *Allis-Chambers Corp.*, this court specifically stated, "[a]s a general rule, an employer that refuses to bargain on the ground that an election is invalid does so at its peril; if the election challenge were to prove fruitless, an order by the Board based on the refusal to bargain would be enforced." 601 F.2d at 874. Accordingly, the Board's order on the Atlantic Group's refusal to bargain pending request for review charge is enforced.

No. 22-60442

## IV.

Because we find the Atlantic Group's grounds for review lack merit and that substantial evidence supports the Board's decision, the Atlantic Group's petition for review is DENIED. The NLRB's cross-application to enforce its order is GRANTED.